Matthew A. Feldman
Paul V. Shalhoub
Andrew S. Mordkoff
WILLKIE FARR & GALLAGHER LLP
787 Seventh Avenue
New York, New York 10019
Telephone: (212) 728-8000
Facsimile: (212) 728-8111

*Proposed Counsel for the Debtors and*
*Debtors in Possession*

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------x

| | | |
|---|---|---|
| In re: | : | Chapter 11 |
| | : | |
| AOG Entertainment, Inc., et al.,[1] | : | Case No. 16-_____ (      ) |
| | : | |
| Debtors. | : | (Joint Administration Pending) |

-----------------------------------------------------

## MOTION FOR APPROVAL OF STIPULATION
## AND ORDER (A) AUTHORIZING DEBTORS TO UTILIZE
## CASH COLLATERAL PURSUANT TO 11 U.S.C. § 363;
## AND (B) GRANTING ADEQUATE PROTECTION TO PREPETITION
## SECURED PARTIES PURSUANT TO 11 U.S.C. §§ 105(A), 361, 362 AND 363

The debtors and debtors in possession in the above-captioned cases (collectively,

the "**Debtors**"), submit this motion (the "**Motion**") for approval of a stipulation (the

"**Stipulation**," attached hereto as Exhibit 1) by and among the Debtors, certain first lien lenders

(collectively, the "**First Lien Lenders**") that are party to that certain First Lien Term Loan

Agreement, dated as December 9, 2011 (as amended, supplemented or otherwise modified from

time to time, the "**FLTLA**"), U.S. Bank (successor by appointment to Goldman Sachs Bank

USA), as administrative agent and collateral agent for the First Lien Lenders (the "**First Lien**

---

[1]    A list of the Debtors in these chapter 11 cases and the last four digits of each Debtor's taxpayer
identification number is attached as Schedule 1 to the Declaration of Peter Hurwitz, President of Certain
Debtors, in Support of Chapter 11 Petitions and First Day Pleadings, which was filed with the Court
concurrently herewith.  The Debtors' executive headquarters are located at 8560 West Sunset Boulevard,
8th Floor, West Hollywood, CA 90069.

Agent"), certain second lien lenders (collectively, the "**Second Lien Lenders**") under the

Second Lien Term Loan Agreement, dated as of December 9, 2011 (as amended, supplemented

or otherwise modified, the "**SLTLA**"), and U.S. Bank (successor by appointment to Goldman

Sachs Bank USA), as administrative agent and collateral agent for the Second Lien Lenders (the

"**Second Lien Agent**"), regarding the Debtors' use of cash and Cash Collateral,[2] if any, on the

terms and conditions set forth in the Stipulation.  In support of the Motion, the Debtors, by their

undersigned proposed counsel, respectfully represent as follows:

## BACKGROUND

1.      On the date hereof (the "**Petition Date**"), each of the Debtors filed a voluntary

petition for relief under chapter 11 of the Bankruptcy Code.  The Debtors intend to continue in

the possession of their respective properties and the management of their respective businesses

as debtors in possession pursuant to sections 1107 and 1108 of the Bankruptcy Code.  The

Debtors have requested that these chapter 11 cases be consolidated for procedural purposes.  As

of the date hereof, no trustee, examiner or official committee has been appointed in any of the

Debtors' cases.

2.      The events leading up to the Petition Date and the facts and circumstances

supporting the relief requested herein are set forth in the Declaration of Peter Hurwitz, President

of Certain Debtors, in Support of Chapter 11 Petitions and First Day Pleadings (the "**First Day**

**Declaration**"), which was filed with the Court on the date hereof.

## JURISDICTION

3.      The Court's consideration of this Stipulation is a core proceeding as defined in 28

U.S.C. §§ 157(b)(2)(A) and (D).  The statutory predicates for the relief sought herein are sections

---

[2]      All capitalized terms used but not defined herein shall have the meanings ascribed to them in the
Stipulation.

105(a), 361, 362 and 363 of the Bankruptcy Code, Rule 4001(b) of the Federal Rules of

Bankruptcy Procedure and Rule 4001-2 of the Local Bankruptcy Rules for the Southern District

of New York (the "**Local Rules**").

## RELIEF REQUESTED

4.      By this Motion, the Debtors seek approval of the Stipulation regarding the

Debtors' use of cash and Cash Collateral, if any, on the terms and conditions set forth in the

Stipulation.

A.      Required Disclosure of Certain Provisions

5.      Pursuant to Local Rule 4001-2 and General Order M-274 of the Bankruptcy Court

(the "**General Order**"), below is a summary of certain provisions of the Stipulation regarding

the terms of the Debtors' use of cash and Cash Collateral, if any.

> (a)    The Stipulation provides, as security for the payment of the First Lien Adequate
> Protection Obligations, the First Lien Agent (for the benefit of the First Lien
> Lenders) (effective and perfected upon the Petition Date and without the necessity
> of the execution by the Debtors of security agreements, pledge agreements,
> mortgages, financing statements or other agreements) a valid, perfected
> replacement security interest in and lien on (a) all of the Collateral and (b) all
> tangible and intangible prepetition and postpetition property of the Debtors,
> whether existing on or as of the Petition Date or thereafter acquired, that is not
> subject to either (i) valid, perfected, non-avoidable and enforceable liens in
> existence on or as of the Petition Date, or (ii) valid liens perfected subsequent to
> the Petition Date as permitted by section 546(b) of the Bankruptcy Code
> (collectively, the "**Unencumbered Property**"; provided, that the Unencumbered
> Property shall not include any claims or causes of action under sections 502(d),
> 544, 545, 547, 548, 550, 551 or 553 of the Bankruptcy Code or any proceeds
> thereof), and (c) all tangible and intangible prepetition and postpetition property
> of the Debtors, whether existing on or as of the Petition Date or thereafter
> acquired, that is subject to valid, perfected, non-avoidable and enforceable liens in
> existence on or as of the Petition Date subject and subordinate only to (i) such
> liens as may be granted in connection with the DIP Order, (ii) the Carve-Out and
> any similar carve-out granted in connection with the DIP Order, and (iii) the Non-
> Primed Liens.[3] See Stipulation, ¶ 7(i).

---

[3]      Non-Primed Liens" are (a) all liens that are valid, perfected and unavoidable liens in existence immediately
prior to the Petition Date and (b) all liens that are valid and unavoidable liens in existence immediately
prior to the Petition Date that are perfected after the Petition Date as permitted by section 546(b) of the

(b)  The Stipulation provides that the First Lien Adequate Protection Obligations shall constitute superpriority claims as provided in section 507(b) of the Bankruptcy Code (the "**First Lien 507(b) Claims**"), with priority in payment over any and all administrative expenses of the kinds specified or ordered pursuant to any provision of the Bankruptcy Code, including without limitation, sections 326, 328, 330, 331, 363, 503, 507(a) and 726 of the Bankruptcy Code, subject and subordinate only to (i) the Carve-Out and any similar carve-out granted in connection with the DIP Order and (ii) such superpriority claims as may be granted in connection with the DIP Order.  Notwithstanding their status as First Lien 507(b) Claims, the First Lien Adequate Protection Obligations may be satisfied in a plan of reorganization confirmed in the Cases in the manner set forth in such plan if holders of at least 66.67% (by amount) and more than one half (by number of holders) of the First Lien Adequate Protection Obligations consent to such treatment.  See Stipulation ¶ 7(ii).

(c)  Waivers of the Debtors' right to a surcharge against Cash Collateral under section 506(c) of the Bankruptcy Code and a limited waiver of section 552(b).  See Stipulation, ¶ 5.

(d)  The Debtors seek a Carve-Out, consisting of:  (i) any fees payable to the Clerk of the Court and to the Office of the U.S. Trustee pursuant to section 1930(a) of title 28 of the United States Code, and any interest on such fees payable pursuant to section 3717 of title 31 of the United States Code, (ii) the reasonable fees and expenses up to $50,000 incurred by a trustee appointed in the Debtors' cases under section 726(b) of the Bankruptcy Code (irrespective of whether the Carve-Out Notice has been delivered) and (iii) up to $500,000 of allowed fees, expenses and disbursements of professionals retained by order of this Court (including any official committee appointed in the Cases (the "**Committee**")), incurred after the occurrence of a Carve-Out Event plus all unpaid professional fees, expenses and disbursements allowed by this Court for professionals employed by the estates and retained by order of this Court up to the amount provided for such estate professionals on a line item basis in the Budget (including any previously unused amounts) that were incurred prior to the occurrence of a Carve-Out Event (regardless of when such fees, expenses and disbursements become allowed by order of this Court).  See Stipulation, ¶ 4.

(e)  This Stipulation shall terminate upon the occurrence of the events specified in paragraph 17 of the Stipulation, including,

　　i.  The expiration of the Specified Period (i.e., 60 days after the Petition Date);

　　ii.  If on a cumulative basis, commencing at the end of the third full week after the Petition Date, tested weekly during the Specified Period, net cash flow prior to adjustment for restructuring activities (as identified in the Budget) is more than twenty percent (20%)

---

Bankruptcy Code, in each case other than the liens of the Prepetition Secured Parties and liens which already are junior to the liens of the Prepetition Secured Parties (collectively, the "**Non-Primed Liens**"),

less than the cash flow prior to adjustment for restructuring activities (as identified in the Budget);

iii.    The failure to provide the weekly financial information set forth in paragraph 9(c) of the Stipulation;

iv.    The lapse or termination of the Debtors' exclusive periods to file and solicit a plan of reorganization pursuant to section 1121 of the Bankruptcy Code or the conversion of any of the Cases to a case under chapter 7 of the Bankruptcy Code;

v.    The conversion or dismissal of the Cases;

vi.    The entry of an order appointing a trustee or examiner with expanded powers in the Cases;

vii.    The Debtors seek to commence an action against the First Lien Agent or any First Lien Lender with respect to any of the Prepetition First Lien Obligations or First Lien Documents, or the Debtors otherwise fail to comply in any material respect with any of the material terms or conditions contained in this Stipulation and Order;

viii.    The Debtors, or any of their affiliates, reject or otherwise terminate any material contract without the written consent of the First Lien Agent or the Required First Lien Lenders; or

ix.    The automatic stay is lifted as to any party in order to permit foreclosure on any of the Prepetition Collateral having a value in excess of $250,000.

B.    <u>Cash Collateral</u>

6.    As of the Petition Date, the Prepetition Secured Parties assert that substantially all of the Debtors' cash, including without limitation, all cash and other amounts on deposit or maintained by the Debtors in any account or accounts with any Prepetition Secured Party and any cash proceeds of the disposition of any Prepetition Collateral within the possession of the Debtors, constitute proceeds of the Prepetition Collateral and, therefore, are cash collateral of the Prepetition Secured Parties, within the meaning of section 363(a) of the Bankruptcy Code (the "**Cash Collateral**").  The Debtors dispute that, except for the Restricted Cash (<u>i.e.</u>, $10 million deposit in an account covered by a control agreement),  cash existing on the Petition Date constitutes cash collateral within the meaning of section 363 of the Bankruptcy Code.  By

entering into this Stipulation and Order, the Debtors are not waiving any rights, claims or

defenses with respect to the Prepetition Secured Parties' position on this issue, and all parties'

rights with respect thereto are expressly reserved and preserved.

C.    Use of Cash Collateral

7.    The reasons supporting the Debtors' need to use cash that the Prepetition Secured

Parties assert is Cash Collateral during the course of the Debtors' cases are compelling.

Immediate and ongoing use of such cash is necessary in order to, among other things, permit the

orderly continuation of their businesses, preserve the going concern value of the Debtors and

their non-Debtor affiliates, make payroll and satisfy other working capital and general corporate

purposes of the Debtors (including costs related to the Cases).  Unless the Debtors use the cash,

the Debtors will be unable to pay for services and expenses necessary to preserve and maximize

the value of the Debtors' estates.  Indeed, were this Court to decline to approve the Stipulation,

and were the Debtors' access to cash limited during the course of a dispute over its use, the

Debtors' reorganization efforts certainly would be harmed.

8.    The Debtors cannot meet their ongoing postpetition obligations unless they are

authorized to use cash that may constitute Cash Collateral.  To the extent that the Debtors' cash

is encumbered by valid, perfected and unavoidable liens of the Prepetition Secured Lenders, the

Debtors' use of Cash Collateral, as proposed herein, is appropriate under section 363(c)(2) of the

Bankruptcy Code, which provides that the Debtors may not use, sell or lease Cash Collateral

unless:  "(a) each entity that has an interest in such Cash Collateral consents; or (b) the court,

after notice and hearing, authorizes such use, sale, or lease in accordance with the provisions of

this section."  11 U.S.C. § 363(c)(2).  Additionally, section 363(e) of the Bankruptcy Code

provides that, upon request of an entity that has an interest in property to be used by a debtor, the

court shall prohibit or condition such use as is necessary to provide adequate protection of such

interest.

9.      The Debtors' request is also appropriate under section 105(a) of the Bankruptcy

Code, which provides that "[t]he court may issue any order, process, or judgment that is

necessary or appropriate to carry out the provisions of the [the Bankruptcy Code]."  11 U.S.C.

§ 105(a).  The Debtors propose to use cash and Cash Collateral, if any, on the terms and

conditions set forth in the Stipulation, as is necessary to continue their operations, including

payments to vendors, employee payroll and to fund certain capital expenditures.  Access to such

cash and Cash Collateral, if any, is therefore crucial to the Debtors' ability to maintain their

businesses and to avoid immediate and irreparable harm to their estates, employees and creditors.

10.     Accordingly, the Debtors request that the Court approve the Stipulation at the first

day hearings in these cases.

## NOTICE

11.     Notice of this Motion will be given to:  (a) the Office of the United States Trustee

for the Southern District of New York; (b) counsel to the First Lien Agent and counsel to the

Second Lien Agent; (c) the Debtors' fifty (50) largest unsecured creditors on a consolidated

basis; (d) counsel to the Ad Hoc Group; (e) counsel to Crestview Media Investors, L.P.; (f)

counsel to MediArena Holding B.V., as holder of the Sixth Amended and Restated Senior

Unsecured Demand Promissory Note; (g) AP NMT JV Newco B.V., as shareholder of CORE

Entertainment Holdings Inc., and/or its counsel, if known; (h) counsel, if known, to the preferred

shareholders of CORE Entertainment Holdings Inc.; (i) Automatic Data Processing, Inc.; (j) the

United States Attorney's Office for the Southern District of New York; (k) the Internal Revenue

Service and state taxing authorities for states in which the Debtors conduct business; (l) those

unions who have entered into collective bargaining agreements and/or letters of adherence with the Debtors; and (m) Debtors' existing banks.  The Debtors submit that, under the circumstances, no other or further notice is required.

12.      No previous request for the relief sought herein has been made to this or any other Court.

13.      Because the authority for the relief requested is referenced herein, the Debtors respectfully request that the Court waive the requirement of Local Rule 9013-1(a) that a separate memorandum of law be submitted herewith.

## CONCLUSION

Based on the foregoing, the Debtors respectfully request that this Court: (i)

approve the Stipulation and (ii) grant such other relief as is just.

Dated:  New York, New York
        April 28, 2016

                              WILLKIE FARR & GALLAGHER LLP
                              *Proposed Counsel for the Debtors and*
                              *Debtors in Possession*

                              By: /s/ Matthew A. Feldman
                                   Matthew A. Feldman
                                   Paul V. Shalhoub
                                   Andrew S. Mordkoff
                                   787 Seventh Avenue
                                   New York, New York 10019
                                   Telephone:  (212) 728-8000
                                   Facsimile:  (212) 728-8111

## **Exhibit 1**

**Stipulation**

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

--------------------------------------------------------x

In re:                                              :        Chapter 11
                                                    :
AOG Entertainment, Inc., et al.,[1]                 :        Case No. 16-_____ (      )
                                                    :
                          Debtors.                  :        (Jointly Administered)

--------------------------------------------------------x

### STIPULATION AND ORDER AUTHORIZING DEBTORS TO USE CASH AND/OR CASH COLLATERAL AND GRANTING ADEQUATE PROTECTION TO PREPETITION SECURED PARTIES

WHEREAS, the debtors and debtors in possession (collectively, the "**Debtors**")

in the above-captioned chapter 11 cases (the "**Cases**") commenced on April 28, 2016 (the

"**Petition Date**") have filed or intend to file shortly a motion (the "**DIP Motion**") seeking

authorization and approval on a non-emergency basis of a debtor in possession financing facility

(the "**DIP Facility**");

WHEREAS, an ad hoc group (the "**Ad Hoc Group**") of certain First Lien Lenders

(as defined below) was formed and subsequently retained Klee, Tuchin, Bogdanoff & Stern LLP

("**Klee Tuchin**") and Houlihan Lokey Capital, Inc. ("**Houlihan**") as its advisors in this matter.

The Ad Hoc Group currently is comprised of the following First Lien Lenders (including funds

and/or accounts managed and/or controlled by such lenders): (1) Tennenbaum Capital Partners

LLC, (2) Bayside Capital, Inc., and (3) Hudson Bay Capital Management, LP.  In addition, the

following First Lien Lenders (including funds and/or accounts managed and/or controlled by

---

[1]    A list of the Debtors in these chapter 11 cases and the last four digits of each Debtor's taxpayer identification number is attached as Schedule 1 to the Declaration of Peter Hurwitz, President of Certain Debtors, in Support of Chapter 11 Petitions and First Day Pleadings [Docket No. ___] and at http://www.kccllc.net/AOG.  The Debtors' executive headquarters are located at 8560 West Sunset Boulevard, 8th Floor, West Hollywood, CA 90069.

such lenders), while not members of the Ad Hoc Group, currently are parties to a common interest/joint defense agreement with the Ad Hoc Group: (1) Credit Suisse Asset Management, LLC and (2) CIT Bank N.A.  The First Lien Lenders referenced above (collectively, the "**First Lien Participating Lenders**") hold, in the aggregate, approximately 64% in principal amount of debt outstanding under the First Lien Documents (as defined below);

WHEREAS, certain First Lien Lenders have asserted that the Debtors' cash constitutes cash collateral of the Prepetition Secured Parties (as defined below) and requires their consent prior to use by the Debtors;

WHEREAS, the Debtors dispute that, except for Restricted Cash (as defined below), the Debtors' cash existing as of the Petition Date constitutes cash collateral of the Prepetition Secured Parties and, therefore, the Debtors believe that they do not require the consent of any Prepetition Secured Party to use such cash;

WHEREAS, to avoid disputes over such issue pending this Court's consideration and determination of the DIP Motion, the Debtors, the First Lien Participating Lenders and Crestview Media Investors, L.P. ("**Crestview**"), a First Lien Lender and a Second Lien Lender (as defined below) that holds approximately 79.2% of the aggregate principal amount of debt outstanding under the Second Lien Documents (as defined below), have engaged in arms-length, good faith negotiations concerning the Debtors' use of cash and the provision of adequate protection to the Prepetition Secured Parties to the extent such cash constitutes cash collateral;

WHEREAS, the Debtors' use of cash is necessary in order to, among other things, permit the orderly continuation of their businesses, preserve the going concern value of the

Debtors and their non-Debtor affiliates, make payroll and satisfy other working capital and general corporate purposes of the Debtors (including costs related to the Cases); and

WHEREAS, the Debtors, the First Lien Participating Lenders and Crestview have agreed, pursuant to the terms set forth in this stipulation and order (the "**Stipulation and Order**"), pending this Court's consideration and determination of the DIP Motion, to (a) the Debtors' use of cash (and Cash Collateral (as defined in paragraph 8 below), to the extent such cash constitutes Cash Collateral, pursuant to section 363 of title 11 of the United States Code (the "**Bankruptcy Code**")), and all other Prepetition Collateral (as defined in paragraph 3(b) below), and (b) the provision of adequate protection to the following parties with respect to the applicable prepetition secured debt obligations:

(i)     the first lien lenders (collectively, the "**First Lien Lenders**") under the First Lien Term Loan Agreement, dated as of December 9, 2011 (as amended, supplemented or otherwise modified, the "**FLTLA**", and, together with all security, pledge and guaranty agreements and all other documentation executed in connection with any of the foregoing, each as amended, supplemented or otherwise modified, the "**First Lien Documents**"), among CORE Entertainment Inc. ("**CORE**") in its capacity as a borrower thereunder, the First Lien Lenders and U.S. Bank (successor by appointment to Goldman Sachs Bank USA), as administrative agent and collateral agent for the First Lien Lenders (in such capacity, the "**First Lien Agent**"); and

(ii)    the second lien lenders (collectively, the "**Second Lien Lenders**") under the Second Lien Term Loan Agreement, dated as of December 9, 2011 (as amended, supplemented or otherwise modified, the "**SLTLA**", and, together with all security, pledge and guaranty agreements and all other documentation executed in connection with any of the foregoing, each as amended, supplemented or otherwise modified, the "**Second Lien Documents**"), among CORE in its capacity as a borrower thereunder, the Second Lien Lenders and U.S. Bank (successor by appointment to Goldman Sachs Bank USA), as administrative agent and collateral agent for the Second Lien Lenders (in such capacity, the "**Second Lien Agent**" and collectively with the First Lien Agent, the First Lien Lenders and the Second Lien Lenders, the "**Prepetition Secured Parties**").

NOW, THEREFORE, IT IS HEREBY STIPULATED AND AGREED BY THE
UNDERSIGNED PARTIES AND, UPON APPROVAL BY THE COURT, ORDERED,
ADJUDGED AND DECREED that:

1.     *Jurisdiction*.  This Court has core jurisdiction over the Cases, this Stipulation and
Order and the parties and property affected hereby pursuant to 28 U.S.C. §§ 157(b) and 1334.
Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

2.     *Notice*.  The Debtors have provided notice of this Stipulation and Order to:  (a)
the Office of the United States Trustee for the Southern District of New York (the "**U.S.
Trustee**"); (b) counsel to the First Lien Agent and counsel to the Second Lien Agent; (c) the
Debtors' fifty (50) largest unsecured creditors on a consolidated basis; (d) counsel to the Ad Hoc
Group; (e) counsel to Crestview; (f) counsel to MediArena Holding B.V., as holder of the Sixth
Amended and Restated Senior Unsecured Demand Promissory Note; (g) AP NMT JV Newco
B.V., as shareholder of CORE Entertainment Holdings Inc., and/or its counsel, if known; (h)
counsel, if known, to the preferred shareholders of CORE Entertainment Holdings Inc.; (i)
Automatic Data Processing, Inc.; (j) the United States Attorney's Office for the Southern District
of New York; (k) the Internal Revenue Service and state taxing authorities for states in which the
Debtors conduct business; (l) those unions who have entered into collective bargaining
agreements and/or letters of adherence with the Debtors; and (m) Debtors' existing banks.  Such
notice constitutes adequate notice under the circumstances of these Cases.  The Debtors have
requested immediate entry of this Stipulation and Order.  The use of the Prepetition Collateral
(including the Cash Collateral, if any) in accordance with this Stipulation and Order is in the best
interest of the Debtors' estates.

- 4 -

3.      *Debtors' Stipulations*.  Without prejudice to the rights of any other party (but subject to the limitations thereon contained in paragraph 13, the Debtors admit, stipulate, and agree that:

(a)      as of the Petition Date, the Debtors and non-Debtor affiliates party to or otherwise obligated under the First Lien Documents were truly and justly indebted and liable to the First Lien Lenders, without defense, counterclaim or offset of any kind, in the aggregate principal amount, plus accrued interest thereon, of not less than $209 million in respect of loans and other extensions of credit made pursuant to the FLTLA, plus any accrued and unpaid fees and expenses (including fees and expenses of attorneys) related thereto as provided in the First Lien Documents, plus all other outstanding amounts that would constitute Obligations under and as defined in the FLTLA (collectively, the "**Prepetition First Lien Obligations**");

(b)      the liens and security interests granted by the Debtors to the First Lien Agent (for the benefit of the First Lien Lenders) to secure the  Prepetition First Lien Obligations are (i) valid, binding, perfected, enforceable, first priority (subject to permitted exceptions under the FLTLA) liens on and security interests in the Debtors' real and personal property constituting Collateral (as defined in the Second Lien Intercreditor Agreement referenced below in paragraph 3(f) and including all Cash Collateral, if any, the "**Prepetition Collateral**"), (ii) not subject to avoidance, recharacterization, reduction, invalidation or subordination pursuant to the Bankruptcy Code or applicable nonbankruptcy law and (iii) subject and subordinate only to (A) after giving effect to this Stipulation and Order, the Carve-Out (as defined in paragraph 4 below) (and any similar carve-out granted in connection with one or more orders approving the DIP Motion or any other motion

approving debtor in possession financing (collectively, the "**DIP Order**"))[2] such liens and

security interests as may be granted in connection with the DIP Order and the Adequate

Protection Obligations (as defined in paragraph 10) and (B) other valid and unavoidable liens

perfected prior to the Petition Date (or perfected after the Petition Date to the extent

permitted by section 546(b) of the Bankruptcy Code) to the extent such liens are senior to the

liens securing the Prepetition First Lien Obligations;

(c)     as of the Petition Date, the Debtors and the non-Debtor affiliates party

to or otherwise obligated under the Second Lien Documents were truly and justly indebted to

the Second Lien Lenders, without defense, counterclaim or offset of any kind, in the

aggregate principal amount, plus accrued and unpaid interest thereon, of not less than $189

million in respect of loans and other extensions of credit made pursuant to the SLTLA, plus

any accrued and unpaid fees and expenses (including fees and expenses of attorneys and

advisors) related thereto as provided in the Second Lien Documents, plus all other

outstanding amounts that would constitute Obligations under and as defined in the SLTLA

(collectively, the "**Prepetition Second Lien Obligations**");

(d)     the liens and security interests granted by the Debtors to the Second

Lien Agent (for the benefit of the Second Lien Lenders) to secure the Prepetition Second

Lien Obligations are (i) valid, binding, perfected, enforceable, second priority (subject to

permitted exceptions under the SLTLA) liens on and security interests in the Prepetition

Collateral constituting Collateral, (ii) not subject to avoidance, recharacterization or

subordination (except as set forth in the Second Lien Intercreditor Agreement) pursuant to

---

[2]       Nothing herein constitutes the Prepetition Secured Parties' approval of or consent to the DIP Order.

the Bankruptcy Code or applicable nonbankruptcy law and (iii) subject and subordinate only

to (A) after giving effect to this Stipulation and Order, the Carve-Out and any similar carve-

out granted in connection with the DIP Order, such liens and security interests as may be

granted in connection with the DIP Order and the Adequate Protection Obligations, (B) the

liens securing the Prepetition First Lien Obligations with respect to the Collateral and (C)

other valid and unavoidable liens perfected prior to the Petition Date (or perfected after the

Petition Date to the extent permitted by section 546(b) of the Bankruptcy Code) to the extent

such liens are senior to the liens securing the Prepetition Second Lien Obligations;

(e)    no portion of the Prepetition First Lien Obligations or the Prepetition

Second Lien Obligations shall be subject to avoidance, recharacterization, disallowance,

reduction, invalidation, offset, recovery or, except in connection with the DIP Order or as set

forth in the Second Lien Intercreditor Agreement, subordination pursuant to the Bankruptcy

Code or applicable nonbankruptcy law;

(f)    The First Lien Agent, the Second Lien Agent, CORE and certain of its

subsidiaries entered into that certain Second Lien Intercreditor Agreement, dated as of

December 9, 2011  (as amended, supplemented or otherwise modified, the "**Second Lien**

**Intercreditor Agreement**"), to set forth the relative lien priorities and other rights and

remedies of the First Lien Lenders and the Second Lien Lenders with respect to, among other

things, the Prepetition Collateral.

4.    *Carve-Out*.  For purposes hereof, the "**Carve-Out**" shall mean (i) any fees

payable to the Clerk of the Court and to the Office of the U.S. Trustee pursuant to section

1930(a) of title 28 of the United States Code, and any interest on such fees payable pursuant to

section 3717 of title 31 of the United States Code, (ii) the reasonable fees and expenses up to

$50,000 incurred by a trustee appointed in the Debtors' cases under section 726(b) of the

Bankruptcy Code (irrespective of whether the Carve-Out Notice (as defined below) has been

delivered) and (iii) up to $500,000 of allowed fees, expenses and disbursements of professionals

retained by order of this Court (including any official committee appointed in the Cases (the

"**Committee**")), incurred after the occurrence of a Carve-Out Event (defined in this paragraph 4

below) plus all unpaid professional fees, expenses and disbursements allowed by this Court for

professionals employed by the estates and retained by order of this Court (collectively, the

"**Estate Professionals"**) up to the amount provided for such Estate Professionals on a line item

basis in the Budget (as defined below) (including any previously unused amounts) that were

incurred prior to the occurrence of a Carve-Out Event (regardless of when such fees, expenses

and disbursements become allowed by order of this Court) .  For the purposes hereof, a "**Carve-**

**Out Event**" shall occur upon the occurrence and during the continuance of an "Event of

Default" under this Stipulation and Order (i) written notice (a "**Carve-Out Notice**") of which has

been by given by either (i) (a) the First Lien Agent or First Lien Lenders holding greater than

50% of the Prepetition First Lien Obligations (the "**Required First Lien Lenders**"), or (b) to the

extent permitted under the Second Lien Intercreditor Agreement, the Second Lien Agent or

Second Lien Lenders holding greater than 50% of the Prepetition Second Lien Obligations (the

"**Required Second Lien Lenders**"), to the Debtors or (ii) in respect of which the Debtors have

knowledge and fail to provide notice to the First Lien Agent and the Ad Hoc Group, and the

Second Lien Agent and Required Second Lien Lenders, within five (5) business days of

obtaining such knowledge; provided that, no Carve-Out Event shall be deemed to have occurred

for purposes of this Stipulation and Order if any such Event of Default is subsequently waived by

the First Lien Agent or the Required First Lien Lenders or, in connection with an Event of

Default in respect of adequate protection granted to the Second Lien Lenders, the Second Lien

Agent or Required Second Lien Lenders.  So long as no Carve-Out Event shall have occurred

and be continuing, the Carve-Out shall not be reduced by the payment of fees, expenses and

disbursements of professionals retained by order of this Court allowed by this Court and payable

under sections 328, 330 and 331 of the Bankruptcy Code.  Upon the occurrence of a Carve-Out

Event, the right of the Debtors to pay professional fees incurred under clause (iii) above without

reduction of the Carve-Out in such clause (iii) shall terminate (unless the underlying Event of

Default giving rise to the Carve-Out Event is subsequently waived by the First Lien Agent or the

Required First Lien Lenders or, in connection with an Event of Default in respect of adequate

protection granted to the Second Lien Lenders, the Second Lien Agent or the Required Second

Lien Lenders) and upon the occurrence of the Carve-Out Event, the Debtors shall provide

immediate notice by facsimile or email to all retained professionals informing them that a Carve-

Out Event has occurred and that the Debtors' ability to pay professionals (to the extent their cash

is Cash Collateral) is subject to the Carve-Out; provided that (A) the Carve-Out shall not be

available to pay any professional fees and expenses incurred in connection with the initiation or

prosecution of any claims, causes of action, adversary proceedings or other litigation against any

Prepetition Secured Party and (B) nothing in this Stipulation and Order shall impair the right of

any party to object to the reasonableness of any such fees or expenses to be paid by the Debtors'

estates.

     5.     *Limitation on Charging Expenses Against Collateral; Limited Waiver of Section*

*552(b) and Marshaling*.  Upon the earlier of entry of a final DIP Order or forty-five (45) days

after the Petition Date, except to the extent of the Carve-Out: (a) no expenses of administration

of the Cases or any future proceeding that may result therefrom, including liquidation in

bankruptcy or other proceedings under the Bankruptcy Code, shall be charged against or recovered from the Prepetition Collateral or any collateral secured by the First Lien Adequate Protection Liens (as defined below) or Second Lien Adequate Protection Liens (as defined below) pursuant to section 506(c) of the Bankruptcy Code or any similar principle of law without the prior written consent of the Prepetition Agents (upon the prior approval of the Required First Lien Lenders), and no such consent shall be implied from any other action or inaction by the Prepetition Agents; (b) the Prepetition Agents and the Prepetition Secured Parties shall be entitled to all of the rights and benefits of Bankruptcy Code section 552(b) (provided, however, the "equities of the case" exception under section 552(b) of the Bankruptcy Code shall not apply to any of the Prepetition Secured Parties with respect to (i) proceeds, products, offspring or profits of any of the Prepetition Collateral or (ii) the extension of the Adequate Protection Liens (as defined below) to cover proceeds of the Prepetition Collateral in each case solely to the extent necessary to satisfy any Adequate Protection Obligations (as defined below) or 507(b) Claims (as defined below) (without waiving any parties' rights with respect to the applicability of the exception (except as provided above) or further request for a waiver thereof)); and (c) in no event shall the Prepetition Collateral, the First Lien Adequate Protection Liens (as defined below), the Second Lien Adequate Protection Liens (as defined below), or any Prepetition Secured Party be subject to the equitable doctrine of "marshaling" or any other similar doctrine with respect to any of the Prepetition Collateral or the collateral secured by the First Lien Adequate Protection Liens or Second Lien Adequate Protection Liens.

6.      *[intentionally omitted]*.

7.      *Adequate Protection for the First Lien Lenders.*  The First Lien Agent and the First Lien Lenders are entitled, pursuant to sections 361, 363(c)(2), 363(e) and 364(d)(1) of the

Bankruptcy Code, to adequate protection of their interests in the Prepetition Collateral, including

the Cash Collateral, if any, in an amount equal to the aggregate diminution in value of their

interests in the Prepetition Collateral, if any, including without limitation, any such diminution

resulting from the sale, lease or use by the Debtors (or other decline in value) of the Cash

Collateral, if any, and any other Prepetition Collateral and the imposition of the automatic stay

pursuant to section 362 of the Bankruptcy Code (such diminution in value, the "**First Lien**

**Adequate Protection Obligations**").  In addition, upon entry of the DIP Order, the First Lien

Agent and the First Lien Lenders shall be entitled to such adequate protection determined by the

Court resulting from such liens and security interests as may be granted in connection with the

DIP Order.  As adequate protection, but solely to the extent of any diminution in value of the

Prepetition Collateral, including Cash Collateral, if any, the First Lien Agent and First Lien

Lenders are hereby granted the following:

        (i)      First Lien Adequate Protection Liens.  As security for the payment

of the First Lien Adequate Protection Obligations, the First Lien Agent (for the

benefit of the First Lien Lenders) is hereby granted (effective and perfected upon

the Petition Date and without the necessity of the execution by the Debtors of

security agreements, pledge agreements, mortgages, financing statements or other

agreements) a valid, perfected replacement security interest in and lien on (a) all

of the Collateral and (b) all tangible and intangible prepetition and postpetition

property of the Debtors, whether existing on or as of the Petition Date or

thereafter acquired, that is not subject to either (i) valid, perfected, non-avoidable

and enforceable liens in existence on or as of the Petition Date, or (ii) valid liens

perfected subsequent to the Petition Date as permitted by section 546(b) of the

Bankruptcy Code (collectively, the "**Unencumbered Property**"; provided, that

the Unencumbered Property shall not include any claims or causes of action under

sections 502(d), 544, 545, 547, 548, 550, 551 or 553 of the Bankruptcy Code or

any proceeds thereof), and (c) all tangible and intangible prepetition and

postpetition property of the Debtors, whether existing on or as of the Petition Date

or thereafter acquired, that is subject to valid, perfected, non-avoidable and

enforceable liens in existence on or as of the Petition Date (the "**First Lien**

**Adequate Protection Liens**"), subject and subordinate only to (i) such liens as

may be granted in connection with the DIP Order (the "**DIP Liens**"), (ii) the

Carve-Out and any similar carve-out granted in connection with the DIP Order,

and (iii) the Non-Primed Liens.[3]

(ii)    First Lien Section 507(b) Claims.  The First Lien Adequate

Protection Obligations shall constitute superpriority claims as provided in section

507(b) of the Bankruptcy Code (the "**First Lien 507(b) Claims**"), with priority in

payment over any and all administrative expenses of the kinds specified or

ordered pursuant to any provision of the Bankruptcy Code, including without

limitation, sections 326, 328, 330, 331, 363, 503, 507(a) and 726 of the

Bankruptcy Code, subject and subordinate only to (i) the Carve-Out and any

similar carve-out granted in connection with the DIP Order and (ii) such

superpriority claims (the "**DIP Superpriority Claims**") as may be granted in

---

[3]    Non-Primed Liens" are (a) all liens that are valid, perfected and unavoidable liens in existence immediately
prior to the Petition Date and (b)  all liens that are valid and unavoidable liens in existence immediately
prior to the Petition Date that are perfected after the Petition Date as permitted by section 546(b) of the
Bankruptcy Code, in each case other than the liens of the Prepetition Secured Parties and liens which
already are junior to the liens of the Prepetition Secured Parties (collectively, the "**Non-Primed Liens**"),

connection with the DIP Order.  Notwithstanding their status as First Lien 507(b)

Claims, the First Lien Adequate Protection Obligations may be satisfied in a plan

of reorganization confirmed in the Cases in the manner set forth in such plan if

holders of at least 66.67% (by amount) and more than one half (by number of

holders) of the First Lien Adequate Protection Obligations consent to such

treatment.

(iii)    Fees and Expenses.   The Debtors shall pay all reasonable fees and

expenses of counsel to the First Lien Agent, Klee Tuchin, Michelmores, and

Quinn Emanuel Urquhart & Sullivan, LLP, and all reasonable fees and expenses

of Houlihan and Millstein & Co., including monthly fees (provided that the

Debtors' payment of all such fees and expenses shall be without prejudice to the

rights of any party in interest, including the Debtors, to assert (or to the ability of

the Court to order) that all amounts so paid should be characterized as a payment

on principal).  None of the fees and expenses payable pursuant to this paragraph 7

shall be subject to separate approval by this Court (but the U.S. Trustee, the

Debtors and the Committee may object to the reasonableness of such fees and

expenses and this Court shall resolve any dispute as to the reasonableness of any

such fees and expenses), and no recipient of any such payment shall be required

to file any interim or final fee application with respect thereto.  The Debtors shall

pay the fees and expenses provided for in this paragraph 7 promptly after receipt

of monthly invoices therefor (redacted as appropriate to preserve privilege), and

the applicable party providing the invoice shall promptly provide copies of such

invoices (either in summary fashion or redacted to protect privileges) to the

counsel to any Committee and to the U.S. Trustee.

8.      *The Parties' Position with respect to "Cash Collateral".*  The Prepetition Secured

Parties assert that substantially all of the Debtors' cash, including without limitation, all cash and

other amounts on deposit or maintained by the Debtors in any account or accounts with any

Prepetition Secured Party and any cash proceeds of the disposition of any Prepetition Collateral

within the possession of the Debtors, constitute proceeds of the Prepetition Collateral and,

therefore, are cash collateral of the Prepetition Secured Parties, within the meaning of section

363(a) of the Bankruptcy Code (the "**Cash Collateral**").  The Debtors dispute that, except for

the Restricted Cash,  cash existing on the Petition Date constitutes cash collateral within the

meaning of section 363 of the Bankruptcy Code.  By entering into this Stipulation and Order, the

Debtors are not waiving any rights, claims or defenses with respect to the Prepetition Secured

Parties' position on this issue, and all parties' rights with respect thereto are hereby expressly

reserved and preserved.

9.      *Use of Prepetition Collateral (Including Cash Collateral, if any).*

(a) The Debtors are hereby authorized to use the Prepetition Collateral, including

the Cash Collateral, if any, during the period from the Petition Date through and including the

Termination Date (as defined below) (the "**Specified Period**") for working capital and general

corporate purposes (including costs related to the Cases) in accordance with the terms and

conditions of this Stipulation and Order; provided that:  (i) the Prepetition Secured Parties are

granted adequate protection as set forth herein, (ii) the Debtors shall not be permitted to transfer

any Cash Collateral (or any other Collateral) to fund any affiliate of the Debtors that has not filed

a chapter 11 case (an "**Unfiled Affiliate**"), provided that if an Unfiled Affiliate lacks sufficient

funds and the Debtors determine that any such transfer is necessary to prevent loss of value of

the Debtors' interest in an Unfiled Affiliate, the Debtors may transfer such funds so long as the

Debtors provide counsel to the Ad Hoc Group, the First Lien Agent, the Second Lien Agent and

Crestview no less than four (4) business days advance written notice of such proposed transfer,

specifying the amount and the business purpose, and if the Ad Hoc Group, the  First Lien Agent,

the Second Lien Agent or Crestview objects to such proposed payment within such four (4)

business day period, the Debtors shall schedule a hearing on an expedited basis before the Court

to address and resolve any such objection; and (iii) except on the terms of this Stipulation and

Order, the Debtors are not authorized to use the Cash Collateral, if any.  By virtue of the First

Lien Lenders' consent to the Debtors' use of Cash Collateral (if any) as set forth in this

Stipulation and Order, pursuant and subject to the Second Lien Intercreditor Agreement and this

Stipulation and Order, the Second Lien Lenders are deemed to have consented to such use of

Cash Collateral.  As used herein, "<u>Termination Date</u>" means the earlier to occur of (a) sixty days

after the Petition Date and (b) five business days after (i) the First Lien Agent or the Required

First Lien Lenders, or (ii) to the extent permitted under the Second Lien Intercreditor Agreement,

the Second Lien Agent or the Required Second Lien Lenders, have provided written notice to the

Debtors of a Termination Event (as defined in paragraph 17 hereof).  Notwithstanding anything

to the contrary contained in this Stipulation and Order, the Debtors hereby confirm that they are

not now seeking to use, nor shall this Stipulation and Order authorize them to use, for any

purpose those funds totaling approximately $10 million residing in that certain bank account at

Citibank, N.A. that is subject to a deposit account control agreement in favor of the First Lien

Agent (the "**<u>Restricted Cash</u>**").

(b) Except as otherwise expressly provided herein, or as otherwise may be ordered by the Court, the Debtors may use cash during the Specified Period solely up to the amounts (subject to the variances described below), at the times and substantially for the purposes identified in the budget attached hereto as Schedule 1 (the "**Budget**").  The Debtors shall not, without the prior consent of the First Lien Agent or the Required First Lien Lenders, and the Second Lien Agent or Crestview (solely to the extent required by the Second Lien Intercreditor Agreement), except to the extent permitted in this paragraph, use cash during the Specified Period such that the Debtors' net cash flow prior to adjustment for restructuring activities (as identified in the Budget) on a cumulative basis commencing at the end of the third full week after the Petition Date is in an amount in excess of twenty percent (20%) below the cumulative amount of net cash flow prior to adjustment for restructuring activities (as identified in the Budget).  If any amount in the Budget is not used for a particular line item in the Budget during the period for which usage of cash is authorized for such line item in this Order, or if cash is used in an amount less than specified in such line item for the budgeted period, then the Debtors may carry over any such unused amount to future periods for such line item in the Budget so long as the aggregate amounts expended do not exceed the amounts budgeted for such line item plus the permitted variance.

(c)  On or before 5:00 p.m. (Prevailing Eastern Time) of Monday of each week, commencing May 16, 2016, the Debtors shall deliver to the First Lien Agent, the Second Lien Agent, the financial advisor for the Ad Hoc Group and the financial advisor for Crestview, and the Committee, (i) a comparison of actual results for the weekly period ending one week before such date of all items contained in the Budget to the amounts originally contained in the Budget, and (ii) a cumulative comparison of the actual results for the period from the Petition Date

through the end of the week for the weekly period ending one week before such date of results of

all items contained in the Budget to the amounts originally contained in the Budget.

10.     *Adequate Protection for the Second Lien Lenders*.   The Second Lien Agent and

the Second Lien Lenders are entitled, pursuant to sections 361, 363(c)(2), 363(e) and 364(d)(1)

of the Bankruptcy Code, to adequate protection of their interests in the Prepetition Collateral,

including the Cash Collateral, if any, in an amount equal to the aggregate diminution in value of

their interests in the Prepetition Collateral, if any, including without limitation, any such

diminution resulting from the sale, lease or use by the Debtors (or other decline in value) of the

Cash Collateral, if any, and any other Prepetition Collateral and the imposition of the automatic

stay pursuant to section 362 of the Bankruptcy Code (such diminution in value, the "**Second

Lien Adequate Protection Obligations**" and collectively with the First Lien Adequate

Protection Obligations, the "**Adequate Protection Obligations**").   In addition, upon entry of the

DIP Order, the Second Lien Agent and the Second Lien Lenders shall be entitled to adequate

protection, determined by the Court, resulting from such liens and security interests as may be

granted in connection with the DIP Order.   As adequate protection, but solely to the extent of any

diminution in value of the Prepetition Collateral, including Cash Collateral, if any, the Second

Lien Agent and Second Lien Lenders are hereby granted the following:

(a)     Second Lien Adequate Protection Liens.   As security for the payment of

the Second Lien Adequate Protection Obligations, the Second Lien Agent (for the benefit of the

Second Lien Lenders) is hereby granted (effective and perfected upon the date of this Stipulation

and Order and without the necessity of the execution by the Debtors of security agreements,

pledge agreements, mortgages, financing statements or other agreements) a valid, perfected

replacement security interest in and lien on all of the Prepetition Collateral and Unencumbered

Property (the "**Second Lien Adequate Protection Liens**" and collectively with the First Lien

Adequate Protection Liens, the "**Adequate Protection Liens**"), subject and subordinate only to

(i) the DIP Liens, (ii) the Carve-Out and any similar carve-out granted in connection with the

DIP Order, (iii) the First Lien Adequate Protection Liens, and (iv) the Non-Primed Liens, and

subject further to the terms of the Second Lien Intercreditor Agreement.

    (b)  Second Lien Section 507(b) Claims.   The Second Lien Adequate

Protection Obligations shall constitute superpriority claims as provided in section 507(b) of the

Bankruptcy Code (the "**Second Lien 507(b) Claims**" and collectively with the First Lien 507(b)

Claims, the "**507(b) Claims**"), with priority in payment over any and all administrative expenses

of the kinds specified or ordered pursuant to any provision of the Bankruptcy Code, including

without limitation, sections 326, 328, 330, 331 and 726 of the Bankruptcy Code, subject and

subordinate only to (i) the Carve-Out and any similar Carve-Out granted in connection with the

DIP Order, (ii) any DIP Superiority Claims granted in respect of the DIP Obligations and (iii)

the First Lien 507(b) Claims, and subject further to the terms of the Second Lien Intercreditor

Agreement.  Notwithstanding their status as Second Lien 507(b) Claims, the Second Lien

Adequate Protection Obligations may be satisfied in a plan of reorganization confirmed in the

Cases either (i) in the manner set forth in such plan if holders of at least 66.67% (by amount) and

more than one-half (by number of holders) of the Second Lien Adequate Protection Obligations

consent to such treatment or (ii) in a manner consistent with the Second Lien Intercreditor

Agreement, including Section 6.04 thereof.

    (c)  Fees and Expenses.  The Debtors shall pay all reasonable fees and

expenses of one counsel to the Second Lien Agent (provided that the Debtors' payment of such

fees and expenses shall be without prejudice to the rights of any party in interest, including the

Debtors, to assert (or to the ability of the Court to order) that all amounts so paid should be

characterized as a payment on principal and/or disgorged).  None of the fees and expenses

payable pursuant to this paragraph 10 shall be subject to separate approval by this Court (but the

U.S. Trustee, the Debtors and the Committee may object to the reasonableness of such fees and

expenses and the Court shall resolve any dispute as to the reasonableness of any such fees and

expenses), and no recipient of any such payment shall be required to file any interim or final fee

application with respect thereto.  The Debtors shall pay the professional fees and expenses

provided for in this paragraph 10 promptly after receipt of monthly invoices therefor (redacted to

protect privileges), and the Second Lien Agent shall promptly provide copies of such invoices

(either in summary fashion or redacted to protect privileges) to the counsel to the Committee and

to the U.S. Trustee.

      11.    *Perfection of Adequate Protection Liens*.

      (a)    Each of the First Lien Agent and the Second Lien Agent (collectively,

the "**Prepetition Agents**") are hereby authorized, but not required, to file or record financing

statements, intellectual property filings, mortgages, notices of lien or similar instruments in

any jurisdiction, take possession of or control over, or take any other action in order to

validate and perfect the applicable Adequate Protection Liens granted to them hereunder,

subject to the terms of the Second Lien Intercreditor Agreement.  Whether or not any of the

Prepetition Agents, in their respective sole discretion, choose to file such financing

statements, intellectual property filings, mortgages, notices of lien or similar instruments,

take possession of or control over, or otherwise confirm perfection of the applicable

Adequate Protection Liens, such Adequate Protection Liens shall be deemed valid, perfected,

allowed, enforceable, non-avoidable and not subject to challenge, dispute or subordination,

other than as set forth herein or in the Second Lien Intercreditor Agreement, as of the date of
entry of this Stipulation and Order.

(b)    A certified copy of this Stipulation and Order may, in the discretion of
the applicable Prepetition Agent, be filed with or recorded in filing or recording offices in
addition to or in lieu of such financing statements, mortgages, notices of lien or similar
instruments, and all filing offices are hereby authorized to accept such certified copy of this
Stipulation and Order for filing and recording.

(c)    The Debtors shall execute and deliver to the applicable Prepetition
Agent all such agreements, financing statements, instruments and other documents as the
applicable agent may reasonably request to evidence, confirm, validate or perfect the
applicable Adequate Protection Liens.

12.    *Preservation of Rights Granted Under the Stipulation and Order.*

(a)    Other than the DIP Liens and the DIP Superpriority Claims, and subject to
the terms of the Second Lien Intercreditor Agreement, no claim or lien having a priority senior to
or *pari passu* with those granted by this Stipulation and Order to the Prepetition Agents shall be
granted or allowed while any portion of the Adequate Protection Obligations remain outstanding,
and the Adequate Protection Liens shall not be subject or junior to any lien or security interest
that is avoided and preserved for the benefit of the Debtors' estates under section 551 of the
Bankruptcy Code or, except as set forth herein or in the Second Lien Intercreditor Agreement, or
in connection with the DIP Order, subordinated to or made *pari passu* with any other lien or
security interest, whether under section 364(d) of the Bankruptcy Code or otherwise.

(b)    The Debtors' right to use Prepetition Collateral (including Cash Collateral,
if any) shall terminate if this Stipulation and Order is modified in any way, whether directly or

by entry of any other having the same effect, that adversely affects any lien, claim, right, or other

protection granted to or for the benefit of any Prepetition Agent or Prepetition Secured Party

without the prior consent of such Prepetition Agent or Prepetition Secured Party (consistent with

the terms of the Second Lien Intercreditor Agreement), and no such consent shall be implied by

any other action, inaction, or acquiescence by any Prepetition Agent or Prepetition Secured

Party, or an order is entered converting or dismissing any of the Cases.

        (c)      Except as expressly provided in this Stipulation and Order, the Adequate

Protection Liens and all other rights and remedies of the Prepetition Secured Parties granted by

this Stipulation and Order shall survive, and shall not be modified, impaired or discharged by (i)

the entry of an order converting any of the Cases to a case under chapter 7 of the Bankruptcy

Code or dismissing any of the Cases, or (ii) the entry of an order confirming a plan of

reorganization in any of the Cases and, pursuant to section 1141(d)(4) of the Bankruptcy Code,

the Debtors have waived any discharge as to any remaining Adequate Protection Obligations.

The terms and provisions of this Stipulation and Order shall continue in the Cases, in any

successor cases if the Cases cease to be jointly administered, or in any superseding chapter 7

cases under the Bankruptcy Code, and the Adequate Protection Liens, the Adequate Protection

Obligations, the 507(b) Claims, and the other administrative claims granted pursuant to this

Stipulation and Order, and all other rights and remedies of the Prepetition Secured Parties

granted by this Stipulation and Order shall continue in full force and effect until all Adequate

Protection Obligations are indefeasibly paid in full in cash or otherwise satisfied in accordance

with this Stipulation and Order.

        (d)      This Stipulation and Order is without prejudice to, and does not constitute

a waiver of, expressly or implicitly, or otherwise impair: (i) any of the Prepetition Secured

Parties' rights granted under the Bankruptcy Code, the First Lien Documents or the Second Lien

Documents, which rights and remedies are hereby fully preserved; or (ii) any of the Prepetition

Secured Parties' rights to seek any additional or supplemental relief in respect of the Debtors,

including the right to seek additional adequate protection, subject to the terms of the Second Lien

Intercreditor Agreement.

13.    *Effect of Stipulations on Third Parties*.  The stipulations and admissions contained

in paragraph 3 of this Stipulation and Order shall be binding upon the Debtors under all

circumstances.  The stipulations and admissions contained in paragraph 3 of this Stipulation and

Order shall be binding upon all parties in interest unless:  (a) any party-in-interest (including the

Committee) that successfully seeks and obtains standing to do so has timely filed an adversary

proceeding or contested matter (subject to the limitations contained herein, including without

limitation, in this paragraph 13) by no later than 75 days after entry of this Stipulation and Order

(provided that any such deadline is subject to extension as may be specified by this Court for

cause shown, or if the applicable Prepetition Agent if the applicable Prepetition Agent (or the

Required First Lien Lenders with respect to the First Lien Obligations or the Required Second

Lien Lenders with respect to the Second Lien Obligations) agrees to such an extension with

respect to any Claims and Defenses (as defined below) in respect of the First Lien Obligations or

the Second Lien Obligations, as applicable) challenging the validity, enforceability, priority or

extent of (A) the First Lien Obligations or the liens on Prepetition Collateral securing the First

Lien Obligations or (B) the Prepetition Second Lien Obligations or the liens on the Prepetition

Collateral securing the Prepetition Second Lien Obligations (collectively, the "**Claims and**

**Defenses**"); and (b) an order is entered and becomes final in favor of the plaintiff sustaining any

such challenge in any such timely filed adversary proceeding or contested matter; provided that,

- 22 -

as to the Debtors, all such Claims and Defenses are hereby irrevocably waived, released and relinquished as of the Petition Date.  If no such adversary proceeding or contested matter is timely filed in respect of the Prepetition First Lien Obligations or the Prepetition Second Lien Obligations, as the case may be, (x) the Prepetition First Lien Obligations and the Prepetition Second Lien Obligations, as the case may be, shall constitute finally and irrevocably allowed claims, not subject to counterclaim, setoff, subordination (except as set forth in the Second Lien Intercreditor Agreement), recharacterization, defense or avoidance, for all purposes in the Cases and any subsequent chapter 7 case, (y) the liens on the Prepetition Collateral securing the Prepetition First Lien Obligations and the Prepetition Second Lien Obligations, as the case may be, shall be deemed to have been, as of the Petition Date, and to be, legal, valid, binding, perfected and of the priority specified in paragraph 3(b) not subject to defense, counterclaim, recharacterization, subordination (except as set forth in the Second Lien Intercreditor Agreement or as may be granted by the Court in connection with the DIP Order) or avoidance and (z) the Prepetition First Lien Obligations, the Prepetition Second Lien Obligations, as the case may be, and the liens on the Prepetition Collateral granted to secure the Prepetition First Lien Obligations and the Prepetition Second Lien Obligations, as the case may be, shall not be subject to any other or further challenge by any party-in-interest (including the Committee), and such party-in-interest shall be enjoined from seeking to exercise the rights of the Debtors' estates, including without limitation, any successor thereto (including, without limitation, any estate representative or a chapter 7 or 11 trustee appointed or elected for any of the Debtors).  If any such adversary proceeding or contested matter is timely filed, the stipulations and admissions contained in paragraph 3 of this Stipulation and Order shall nonetheless remain binding and preclusive (as provided in the third  sentence of this paragraph) on all parties-in-interest (including the

Committee), except as to any such findings and admissions that were expressly and successfully

challenged in such adversary proceeding or contested matter.

14.    *Limitation on Use of Prepetition Collateral*. Notwithstanding anything herein or

in any other order of this Court to the contrary, neither any Prepetition Collateral (including the

Cash Collateral, if any) nor the Carve-Out may be used to (a) object, contest or raise any defense

to, the validity, perfection, priority, extent or enforceability of any amount due under the First

Lien Documents  or the Second Lien Documents or the liens or claims granted under this

Stipulation and Order, (b) assert any Claims and Defenses, (c) seek to modify any of the rights

granted to the Prepetition Secured Parties hereunder or the Prepetition Debt Documents, in the

case of each of the foregoing clauses (a) through (c), without such party's prior written consent

or (d) pay any amount on account of any claims arising prior to the Petition Date unless such

payments are approved by an order of this Court; <u>provided</u> that, notwithstanding anything to the

contrary herein, no more than an aggregate of $50,000 of the Prepetition Collateral (including the

Cash Collateral, if any) or the Carve-Out may be used by the Committee to investigate the

validity, enforceability or priority of the Prepetition First Lien Obligations, the Prepetition

Second Lien Obligations or the liens on the Prepetition Collateral securing the Prepetition First

Lien Obligations or the Prepetition Second Lien Obligations, or investigate any Claims and

Defenses.

15.    *Binding Effect; Successors and Assigns*.  The provisions of this Stipulation and

Order, including all findings herein, shall be binding upon all parties-in-interest in the Cases,

including without limitation, the Prepetition Secured Parties, and the Debtors and their respective

successors and assigns (including any chapter 7 or chapter 11 trustee hereinafter appointed or

elected for any of the Debtors, an examiner with expanded powers appointed pursuant to section

1104 of the Bankruptcy Code, or any other fiduciary appointed as a legal representative of any of the Debtors or with respect to the property of the estate of any of the Debtors) and shall inure to the benefit of the Prepetition Secured Parties and the Debtors and their respective successors and assigns.

16.     *Second Lien Intercreditor Agreement.*  Nothing in this Stipulation and Order shall amend or otherwise modify the terms or enforceability of the Second Lien Intercreditor Agreement, including without limitation, any rights as unsecured creditors of the Debtors as set forth therein, any approval provisions contained therein, and any turnover provisions contained therein, and the Second Lien Intercreditor Agreement shall each remain in full force and effect. The rights of the Prepetition Secured Parties shall at all times remain subject to the Second Lien Intercreditor Agreement.

17.     *Termination Events.*  The occurrence of any of the following events, unless waived in writing by the First Lien Agent or Required First Lien Lenders, shall constitute a "Termination Event" hereunder:

(a)     The expiration of the Specified Period;

(b)     If on a cumulative basis, commencing at the end of the third full week after the Petition Date, tested weekly during the Specified Period, net cash flow prior to adjustment for restructuring activities (as identified in the Budget) is more than twenty percent (20%) less than the net cash flow prior to adjustment for restructuring activities (as identified in the Budget);

(c)     The failure to provide the weekly financial information set forth in paragraph 9(c) above;

(d)    The lapse or termination of the Debtors' exclusive periods to file and solicit a plan of reorganization pursuant to section 1121 of the Bankruptcy Code or the conversion of any of the Cases to a case under chapter 7 of the Bankruptcy Code;

(e)    The conversion or dismissal of the Cases;

(f)    The entry of an order appointing a trustee or examiner with expanded powers in the Cases;

(g)    The Debtors seek to commence an action against the First Lien Agent or any First Lien Lender with respect to any of the Prepetition First Lien Obligations or First Lien Documents, or the Debtors otherwise fail to comply in any material respect with any of the material terms or conditions contained in this Stipulation and Order;

(h)    The Debtors, or any of their affiliates, reject or otherwise terminate any material contract without the written consent of the First Lien Agent or the Required First Lien Lenders; or

(i)    The automatic stay is lifted as to any party in order to permit foreclosure on any of the Prepetition Collateral having a value in excess of $250,000.

18.    *Proofs of Claim.*  Neither the Prepetition Agents nor the other Prepetition Secured Parties will be required to file proofs of claim in the Cases or any converted case with respect to any obligations under the First Lien Documents, the Second Lien Documents, any other claims or liens granted hereunder or created hereby.  The Prepetition Agents are hereby authorized and entitled, in their sole discretion, but not required, to file (and amend and/or supplement, as they see fit, as may be permitted by the Bankruptcy Rules) aggregate proofs of claims in the Cases on behalf of themselves and their respective  Prepetition Secured Parties in respect of the Prepetition First Lien Obligations, the Prepetition Second Lien Obligations or the Adequate Protection

Obligations.  Any proof of claim so filed shall be deemed to be in addition and not in lieu of any

other proof of claim that may be filed by any of the Prepetition Secured Parties and/or in addition

to the stipulated liens and claims set forth in this Stipulation and Order.  The Debtor shall request

that any order entered by the Court in relation to the establishment of a bar date in the Cases will

provide that the Prepetition Agents and other Prepetition Secured Parties shall have no obligation

to comply with the bar date.

19.      *Rules of Construction*.  For the avoidance of doubt, the rules of construction

contained in Bankruptcy Code section 102 shall be applicable to this Stipulation and Order

(except for the rule of construction contained in section 102(5)).

20.      *Effectiveness*.  This Stipulation and Order shall take effect immediately upon

entry hereof, and there shall be no stay of effectiveness of this Stipulation and Order.

*Signature page follows.*

IN WITNESS WHEREOF, the parties hereto have caused this Stipulation to be duly

executed as of this 28th day of April, 2016.

WILLKIE FARR & GALLAGHER LLP
*Proposed Counsel for the Debtors and
Debtors in Possession*

By: /s/ Matthew A. Feldman
     Matthew A. Feldman
     Paul V. Shalhoub
     Andrew S. Mordkoff
     787 Seventh Avenue
     New York, New York 10019
     Telephone:  (212) 728-8000
     Facsimile:  (212) 728-8111


KLEE, TUCHIN, BOGDANOFF & STERN LLP
*Counsel for the Ad Hoc Group*

By: /s/ David A. Fidler
     David A. Fidler
     Lee R. Bogdanoff
     1999 Avenue of the Stars
     Thirty-Ninth Floor
     Los Angeles, CA 90067
     Telephone:  (310) 407-4000
     Facsimile:  (310) 407-9090


QUINN EMANUEL URQUHART & SULLIVAN, LLP
*Counsel to Crestview Media Investors, L.P.*

By: /s/ Eric Winston
     Eric Winston
     Scott Shelley
     865 S. Figueroa Street
     10th Floor
     Los Angeles, CA 90017
     Telephone:  (213) 443-3000
     Facsimile:  (213) 443-3100

SO ORDERED THIS \_\_\_\_ DAY OF APRIL, 2016

_____

UNITED STATES BANKRUPTCY JUDGE

## **Schedule 1**

**Budget**

**Project Sapphire**

*Chapter 11 Liquidity Forecast*

| ($ in 000s) | Week Ended | | | | | | | | | | | | | Budget Total |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Week: | 05/07/16 | 05/14/16 | 05/21/16 | 05/28/16 | 06/04/16 | 06/11/16 | 06/18/16 | 06/25/16 | 07/02/16 | 07/09/16 | 07/16/16 | 07/23/16 | 07/30/16 | |
| | 1 | 2 | 3 | 4 | 5 | 6 | 7 | 8 | 9 | 10 | 11 | 12 | 13 | |
| | Budget | Budget | Budget | Budget | Budget | Budget | Budget | Budget | Budget | Budget | Budget | Budget | Budget | Total |
| **Net Business Line & Corporate Cash Receipts (Disbursements)** | | | | | | | | | | | | | | |
| **19 Entertainment** | | | | | | | | | | | | | | |
| Idol | $284 | $-- | $425 | ($10) | $79 | $-- | ($8) | $-- | $1,559 | ($8) | $-- | $-- | ($8) | $2,312 |
| ROW Idol | 22 | (10) | 614 | 1,264 | (16) | 40 | -- | (16) | -- | -- | (10) | -- | -- | 1,888 |
| SYTYCD | 4,397 | (1,400) | (600) | 703 | (600) | 2,937 | (900) | (1,740) | (1,300) | (500) | (400) | (340) | (200) | 56 |
| Other 19E projects | 2 | (254) | 88 | 215 | 188 | 320 | (81) | (80) | (73) | (78) | 215 | (28) | (35) | 400 |
| 19E Operating Payments | -- | (50) | (50) | (50) | (98) | (50) | (50) | (50) | (98) | (50) | (50) | (50) | (50) | (696) |
| Taxes | -- | -- | -- | -- | -- | -- | -- | -- | -- | -- | -- | -- | -- | -- |
| **Corporate** | | | | | | | | | | | | | | |
| Overhead | ($97) | ($378) | $47 | ($230) | ($147) | ($530) | $47 | ($230) | ($147) | ($230) | ($550) | ($133) | ($147) | ($2,225) |
| Storm Note Receivable/(Payable) | -- | -- | -- | 327 | -- | -- | -- | -- | -- | -- | -- | -- | -- | 327 |
| Limited Funding to Sharp/B17 | -- | -- | -- | -- | -- | -- | -- | -- | -- | -- | -- | -- | -- | -- |
| Corporate Capex | -- | -- | -- | -- | -- | -- | -- | -- | -- | -- | -- | -- | -- | -- |
| D&O Run-off premium | -- | -- | -- | -- | -- | -- | -- | -- | -- | -- | -- | -- | -- | -- |
| **Cash Flow Prior to Restructuring Adjustments (CF from Operations)** | $4,607 | ($2,092) | $524 | $2,219 | ($594) | $2,717 | ($992) | ($2,116) | ($59) | ($866) | ($295) | ($551) | ($440) | $2,063 |
| **Adjustments for Restructuring Activities** | | | | | | | | | | | | | | |
| Prepetition Claim Payments (Critical Vendors) | ($200) | ($200) | ($100) | $-- | $-- | $-- | $-- | $-- | $-- | $-- | $-- | $-- | $-- | ($500) |
| Professional Fees (Less Holdbacks) | -- | -- | -- | -- | (960) | -- | -- | -- | (1,540) | -- | -- | -- | (580) | (3,080) |
| KEIP/KERP Payments | -- | -- | -- | -- | (940) | -- | -- | -- | -- | -- | -- | -- | -- | (940) |
| **Total Chapter 11 Adjustments** | ($200) | ($200) | ($100) | $-- | ($1,900) | $-- | $-- | $-- | ($1,540) | $-- | $-- | $-- | ($580) | ($4,520) |
| **Period Cash Flow** | $4,407 | ($2,292) | $424 | $2,219 | ($2,494) | $2,717 | ($992) | ($2,116) | ($1,599) | ($866) | ($295) | ($551) | ($1,020) | ($2,457) |
| **Ending Operating Cash Balance** | $6,895 | $6,145 | $7,276 | $8,625 | $6,805 | $6,660 | $6,349 | $5,208 | $4,979 | $4,688 | $4,574 | $4,448 | $3,663 | $3,663 |
| **Ending Total Cash Balance (includes Production Cash)** | 11,681 | 9,389 | 9,813 | 12,033 | 9,538 | 12,255 | 11,264 | 9,148 | 7,549 | 6,683 | 6,388 | 5,837 | 4,817 | 4,817 |

**Project Sapphire**

*Chapter 11 Liquidity Forecast - Weekly Variance Submission Form*

| | Week Ended | | | | Commentary |
|---|---|---|---|---|---|
| ($ in 000s) | 05/07/16 | | | | |
| Week: | 1 | | | | |

| Net Business Line & Corporate Cash Receipts (Disbursements) | BUDGET | ACTUAL | VARIANCE ($) | VARIANCE (%) | |
|---|---|---|---|---|---|
| **19 Entertainment** | | | | | |
| Idol | $284 | $-- | ($284) | (100.0%) | |
| ROW Idol | 22 | -- | (22) | (100.0%) | |
| SYTYCD | 4,397 | -- | (4,397) | (100.0%) | |
| Other 19E projects | 2 | -- | (2) | (100.0%) | |
| 19E Operating Payments | -- | -- | -- | NA | |
| Taxes | -- | -- | -- | NA | |
| | | | | | |
| **Corporate** | | | | | |
| Overhead | ($97) | $-- | $97 | (100.0%) | |
| Storm Note Receivable/(Payable) | -- | -- | -- | NA | |
| Limited Funding to Sharp/B17 | -- | -- | -- | NA | |
| Corporate Capex | -- | -- | -- | NA | |
| D&O Run-off premium | -- | -- | -- | NA | |
| | | | | | |
| **Cash Flow Prior to Restructuring Adjustments (CF from Operations)** | $4,607 | $-- | ($4,607) | (100.0%) | |

**Project Sapphire**

*Chapter 11 Liquidity Forecast - Cumulative Variance Test Form*

| ($ in 000s) | | Week Ended | | | | | | | | | | | | | Variance | Commentary |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Week: | 05/07/16 1 | 05/14/16 2 | 05/21/16 3 | 05/28/16 4 | 06/04/16 5 | 06/11/16 6 | 06/18/16 7 | 06/25/16 8 | 07/02/16 9 | 07/09/16 10 | 07/16/16 11 | 07/23/16 12 | 07/30/16 13 | 13 Week Total | |
| **Cash Flow Prior to Restructuring Adjustments (CF from Operations) - CUMULATIVE** | | | | | | | | | | | | | | | |
| Budget | $4,607 | $2,515 | $3,039 | $5,259 | $4,664 | $7,381 | $6,389 | $4,273 | $4,214 | $3,348 | $3,054 | $2,503 | $2,063 | $2,063 | |
| Actual | $ -- | $ -- | $ -- | $ -- | $ -- | $ -- | $ -- | $ -- | $ -- | $ -- | $ -- | $ -- | $ -- | $ -- | |
| Variance ($) | ($4,607) | ($2,515) | ($3,039) | ($5,259) | ($4,664) | ($7,381) | ($6,389) | ($4,273) | ($4,214) | ($3,348) | ($3,054) | ($2,503) | ($2,063) | ($2,063) | |
| Variance (Maximum %) | 20.0% | | | | | | | | | | | | | | |

**Project Sapphire**

*Estate Professional Fee Annex*

| ($ in 000s)<br>Week: | Week Ended | | | | | | | | | | | | | Budget |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | 05/07/16<br>1<br>Budget | 05/14/16<br>2<br>Budget | 05/21/16<br>3<br>Budget | 05/28/16<br>4<br>Budget | 06/04/16<br>5<br>Budget | 06/11/16<br>6<br>Budget | 06/18/16<br>7<br>Budget | 06/25/16<br>8<br>Budget | 07/02/16<br>9<br>Budget | 07/09/16<br>10<br>Budget | 07/16/16<br>11<br>Budget | 07/23/16<br>12<br>Budget | 07/30/16<br>13<br>Budget | Total |
| **Estate Professional Fee Schedule - ACCRUAL BASIS** | | | | | | | | | | | | | | |
| **Debtor** | | | | | | | | | | | | | | |
| Moelis & Company | ($31) | ($31) | ($31) | ($31) | ($31) | ($31) | ($31) | ($31) | ($25) | ($25) | ($25) | ($25) | ($25) | **($375)** |
| Willkie Farr & Gallagher | (125) | (125) | (125) | (125) | (125) | (125) | (125) | (125) | (100) | (100) | (100) | (100) | (100) | **(1,500)** |
| PwC | (13) | (13) | (13) | (13) | (13) | (13) | (13) | (13) | (10) | (10) | (10) | (10) | (10) | **(150)** |
| Out-of-Pocket Expenses | (6) | (6) | (6) | (6) | (6) | (6) | (6) | (6) | (5) | (5) | (5) | (5) | (5) | **(75)** |
| Other Professionals (TBD) | (6) | (6) | (6) | (6) | (6) | (6) | (6) | (6) | (5) | (5) | (5) | (5) | (5) | **(75)** |
| **Unsecured Creditors Committee's Advisors** | | | | | | | | | | | | | | |
| Financial Advisor | ($13) | ($13) | ($13) | ($13) | ($13) | ($13) | ($13) | ($13) | ($10) | ($10) | ($10) | ($10) | ($10) | **($150)** |
| Legal Counsel | (25) | (25) | (25) | (25) | (25) | (25) | (25) | (25) | (20) | (20) | (20) | (20) | (20) | **(300)** |
| **Other** | | | | | | | | | | | | | | |
| Court Fees, Notice of Claims Agent & Trustees | ($13) | ($13) | ($13) | ($13) | ($13) | ($13) | ($13) | ($13) | ($10) | ($10) | ($10) | ($10) | ($10) | **($150)** |
| **Total Estate Professional Fees - ACCRUAL BASIS** | **($231)** | **($231)** | **($231)** | **($231)** | **($231)** | **($231)** | **($231)** | **($231)** | **($185)** | **($185)** | **($185)** | **($185)** | **($185)** | **($2,775)** |