**Hearing Date: June 28, 2016 at 10:00 a.m. (prevailing Eastern time)**
**Objection Deadline: June 21, 2016 at 4:00 p.m. (prevailing Eastern time)**

Matthew A. Feldman
Paul V. Shalhoub
Andrew S. Mordkoff
WILLKIE FARR & GALLAGHER LLP
787 Seventh Avenue
New York, New York 10019
Telephone: (212) 728-8000
Facsimile: (212) 728-8111

*Counsel for the Debtors and*
*Debtors in Possession*

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------x
| | | |
|---|---|---|
| In re: | : | Chapter 11 |
| | : | |
| AOG Entertainment, Inc., et al.,[1] | : | Case No. 16-11090 (SMB) |
| | : | |
| Debtors. | : | (Jointly Administered) |

-------------------------------------------------------x

# NOTICE OF DEBTORS' MOTION FOR ORDER UNDER SECTIONS 365(a) AND 502 OF THE BANKRUPTCY CODE, BANKRUPTCY RULE 6006 AND LOCAL BANKRUPTCY RULE 6006-1:  (A) AUTHORIZING REJECTION OF LEASE AGREEMENT WITH 900 THIRD AVENUE, L.P.; (B) ESTIMATING RESULTING REJECTION DAMAGE CLAIM; AND (C) GRANTING RELATED RELIEF

PLEASE TAKE NOTICE that a hearing (the "**Hearing**") will be held before the Honorable Stuart M. Bernstein of the United States Bankruptcy Court for the Southern District of New York (the "**Bankruptcy Court**") on **June 28, 2016 at 10:00 a.m. (prevailing Eastern Time)**, or as soon thereafter as counsel may be heard, in Courtroom 723, One Bowling Green, New York, New York 10004, to consider the annexed motion (the "**Motion**") of the debtors and debtors in possession in the above-captioned cases (collectively, the "**Debtors**") for an order

---

[1] A list of the Debtors in these chapter 11 cases and the last four digits of each Debtor's taxpayer identification number is attached as Schedule 1 to the Declaration of Peter Hurwitz, President of Certain Debtors, in Support of Chapter 11 Petitions and First Day Pleadings [Docket No. 3] and at http://www.kccllc.net/AOG.  The Debtors' executive headquarters are located at 8560 West Sunset Boulevard, 8th Floor, West Hollywood, CA 90069.

(a) authorizing the Debtors to reject that certain Lease between Debtor CORE Media Group Inc. and Paramount Group, Inc., as Agent for 900 Third Avenue, L.P., dated as of December 23, 2011, (b) estimating the resulting rejection damage claim, and (c) granting related relief.

PLEASE TAKE FURTHER NOTICE that responses or objections, if any, to the Motion must: (i) be made in writing; (ii) state with particularity the grounds therefor; (iii) be filed with the Bankruptcy Court (with a copy to the Judge's chambers); and (iv) be served upon: (a) AOG Entertainment, Inc., 8560 West Sunset Boulevard, 8th Floor, West Hollywood, CA 90069 (Attn: Peter Hurwitz); (b) counsel for the Debtors, Willkie Farr & Gallagher LLP, 787 Seventh Avenue, New York, NY 10019 (Attn: Matthew A. Feldman, Esq., Paul V. Shalhoub, Esq. and Andrew S. Mordkoff, Esq.); (c) counsel to the ad hoc group of lenders party to the Debtors' prepetition first lien secured credit agreement, Klee, Tuchin, Bogdanoff & Stern LLP, 1999 Avenue of the Stars, 39th Floor, Los Angeles, CA 90067-6049 (Attn: Lee R. Bogdanoff, Esq. and David A. Fidler, Esq.); (d) counsel to Crestview Media Investors, L.P., as lender under the Debtors' prepetition first and second lien secured credit agreements, Quinn Emanuel Urquhart & Sullivan, LLP, 865 S. Figueroa Street, 10th Floor, Los Angeles, CA 90017 (Attn: Eric Winston, Esq.); (e) proposed counsel to the Official Committee of Unsecured Creditors, Sheppard, Mullin, Richter & Hampton LLP, 30 Rockefeller Plaza, New York, NY 10112 (Attn: Craig Wolfe, Esq., Malani Cademartori, Esq. and Jason R. Alderson, Esq.); and (f) the Office of the United States Trustee, 201 Varick Street, Suite 1006, New York, NY 10014 (Attn: Richard C. Morrissey, Esq.), so as to be received no later than **4:00 p.m. (prevailing Eastern time) on June 21, 2016** (the "**Objection Deadline**").

PLEASE TAKE FURTHER NOTICE that if no responses or objections are received by the Objection Deadline, the relief may be granted as requested in the Motion without further notice or a hearing.

PLEASE TAKE FURTHER NOTICE that you need not appear at the Hearing if you do not object to the relief requested in the Motion.

PLEASE TAKE FURTHER NOTICE that the Hearing may be continued or adjourned from time to time without further notice other than an announcement of the adjourned date or dates at the Hearing or at a later hearing.

Dated: June 14, 2016
      New York, New York

           WILLKIE FARR & GALLAGHER LLP
           *Counsel for the Debtors and*
           *Debtors in Possession*

           By: /s/ Paul V. Shalhoub
              Matthew A. Feldman
              Paul V. Shalhoub
              Andrew S. Mordkoff

              787 Seventh Avenue
              New York, New York 10019
              Telephone:  (212) 728-8000
              Facsimile:  (212) 728-8111

Matthew A. Feldman
Paul V. Shalhoub
Andrew S. Mordkoff
WILLKIE FARR & GALLAGHER LLP
787 Seventh Avenue
New York, New York 10019
Telephone: (212) 728-8000
Facsimile: (212) 728-8111

*Counsel for the Debtors and
Debtors in Possession*

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

--------------------------------------------------------x
| | | |
|---|---|---|
| In re: | : | Chapter 11 |
| | : | |
| AOG Entertainment, Inc., et al.,[1] | : | Case No. 16-11090 (SMB) |
| | : | |
| Debtors. | : | (Jointly Administered) |

--------------------------------------------------------x

**DEBTORS' MOTION FOR ORDER
UNDER SECTIONS 365(a) AND 502 OF
THE BANKRUPTCY CODE, BANKRUPTCY
RULE 6006 AND LOCAL BANKRUPTCY RULE 6006-1:
(A) AUTHORIZING REJECTION OF LEASE AGREEMENT
WITH 900 THIRD AVENUE, L.P.; (B) ESTIMATING RESULTING
REJECTION DAMAGE CLAIM; AND (C) GRANTING RELATED RELIEF**

TO THE HONORABLE STUART M. BERNSTEIN:

The debtors and debtors in possession in the above-captioned cases (collectively, the "**Debtors**") hereby move for entry of an order, pursuant to sections 365(a) and 502 of title 11 of the United States Code (the "**Bankruptcy Code**"), Rule 6006 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**") and Rule 6006-1 of the Local Bankruptcy Rules for the United States Bankruptcy Court for the Southern District of New York (the "**Local**

---

[1] A list of the Debtors in these chapter 11 cases and the last four digits of each Debtor's taxpayer identification number is attached as Schedule 1 to the Declaration of Peter Hurwitz, President of Certain Debtors, in Support of Chapter 11 Petitions and First Day Pleadings, [Docket No. 3] and at http://www.kccllc.net/AOG. The Debtors' executive headquarters are located at 8560 West Sunset Boulevard, 8th Floor, West Hollywood, CA 90069.

**Bankruptcy Rules**"), (a) authorizing the Debtors to reject that certain lease between Debtor CORE Media Group Inc. ("**CORE**" or "**Tenant**") and Paramount Group, Inc., as Agent for 900 Third Avenue, L.P. (the "**Landlord**"), dated as of December 23, 2011, attached hereto as Exhibit A (the "**Lease**"), (b) estimating the resulting rejection damage claim, and (c) granting related relief, as more fully described herein (the "**Motion**").  In support of the Motion, the Debtors rely upon and incorporate by reference the Declaration of Peter Hurwitz, President of Certain Debtors, in Support of Chapter 11 Petitions and First Day Pleadings [Docket No. 3] (the "**First Day Declaration**"), which was filed with the Court on the Petition Date (as defined herein).  In further support of the Motion, the Debtors, by and through their undersigned counsel, respectfully represent:

## JURISDICTION

1.  This Court has jurisdiction to consider this Motion pursuant to 28 U.S.C. §§ 157 and 1334.  This is a core proceeding pursuant to 28 U.S.C. § 157(b).  Venue of these cases and this Motion in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409.  The statutory predicates for the relief requested herein are sections 365(a) and 502 of the Bankruptcy Code, Bankruptcy Rule 6006, and Local Bankruptcy Rule 6006-1.

## BACKGROUND

2.  On April 28, 2016 (the "**Petition Date**"), each of the Debtors filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code.  The Debtors are continuing in the possession of their respective properties and the management of their respective businesses as debtors in possession pursuant to sections 1107 and 1108 of the Bankruptcy Code.  These chapter 11 cases have been consolidated for procedural purposes only.

3. On May 17, 2016, an official committee of unsecured creditors (the "**Committee**") was appointed in these cases. As of the date hereof, no trustee or examiner has been appointed in any of the Debtors' cases.

4. The events leading up to the Petition Date and the facts and circumstances supporting the relief requested herein are set forth in the First Day Declaration.

## RELIEF REQUESTED

5. By this Motion, the Debtors seek entry of an order, substantially in the form annexed hereto as Exhibit B (the "**Proposed Order**"), pursuant to sections 365(a) and 502 of the Bankruptcy Code, (a) authorizing the Debtors to reject the Lease, (b) estimating the resulting rejection damage claim, and (c) granting related relief, as more fully described herein.

6. The Debtors have determined that the Lease is no longer beneficial to the estates and should be rejected as of the effective date of this Motion. Prior to the Petition Date, the Debtors entered into a sub-lease for the premises (the "**Sublease**" as described below, and attached hereto as Exhibit C) and executed with the Landlord a consent to the sublease ("**Consent to Sublease**" as described below, and attached hereto as Exhibit D). The sub-tenant ("**Subtenant**" as described below) is currently in possession of the premises under the Lease. Upon rejection of the Lease, the Subtenant will pay to the Landlord rent in excess of the rent currently paid by the Debtors to the Landlord. Moreover, the Landlord has agreed to accept the Subtenant (Consent to Sublease, ¶ 5), and the term of the Sublease is set to end one day prior to the end of the Lease term, effectively rendering the Sublease coextensive with the Lease. For that reason, the Debtors believe that no damages will arise from rejection of this Lease.

A.  **Background to Rejection of the Lease**

7. On December 23, 2011, CORE entered into the Lease with the Landlord, to rent the 23rd Floor of 900 Third Avenue, in Manhattan (the "**Premises**"), with the term to begin June 1, 2012 and running through March 31, 2023. This Lease provided new office space for CORE, which had just undergone an expansion, as more fully set forth in the First Day Declaration. After executing the Lease, but prior to occupying the Premises, the Debtors invested approximately $3.7 million in various leasehold improvements to the Premises, of which approximately $1 million was reimbursed by the Landlord, for a net investment of approximately $2.7 million.

8. In connection with its entry into the Lease, on February 14, 2012, Tenant provided the Landlord an irrevocable standby letter of credit, (the "**Letter of Credit**"), in the amount of $927,454.16. The Letter of Credit was required under the Lease as a security deposit (the "**Security Deposit**"). If Tenant fails to perform under the terms of the Lease, such as failure to pay rent, the Landlord may draw down on Security Deposit, "to the extent required for the payment of any such Fixed Rent or additional rent or any other sum as to which Tenant is in default . . . ." Lease, Section 31.01. The annual rent under the Lease is $1,112,945.00, from the date of commencement through April 1, 2018. Lease, Section 1.04.

9. The Letter of Credit was issued by Citibank, N.A. ("**Citibank**"), and is secured by a deposit account (the "**Deposit Account**") held at Citibank for the full amount of the Letter of Credit. Upon presentation of appropriate documentation, Citibank must fund the Landlord up to the maximum amount of the Letter of Credit, and can correspondingly draw down the Deposit Account as reimbursement for any payments to the Landlord.

10. In 2014, the Debtors acquired additional, less expensive, office space in New York and determined to sublet the Premises, in accordance with the terms of the Lease. The Debtors subleased the entire space to Leucadia National Corporation, the Subtenant, pursuant to the Sublease agreement signed on October 1, 2014. The Debtors incurred approximately $800,000 in costs in connection with finding the Subtenant and executing the Sublease, in the form of brokerage fees and initial rental discounts. The Sublease required a Consent to Sublease, which was signed by the Landlord, effective as of October 1, 2014.

11. Under the Sublease, the annual fixed rent is $1,167,680.00, and currently is paid by the Subtenant directly to the Tenant. Sublease, ¶ 5. The Subtenant also provided a letter of credit for the benefit of the Tenant (the "**Sublease Letter of Credit**"), in the amount of $290,920.01, in case the Subtenant defaults on any of its obligations to the Tenant, including failure to pay rent. Sublease, ¶ 25.

12. The Landlord agreed to the Sublease under the Consent to Sublease. Under the Consent to Sublease, if the term of the Lease ends earlier than the term of the Sublease, then the Subtenant steps into the shoes of the Debtors, and is required to perform all obligations "under the Sublease directly to Landlord as if Landlord were the sublandlord under the Sublease." Consent to Sublease, ¶ 5(a). The Lease also provides for such attornment. Lease, Section 27.04. Finally, the Tenant is required to turn over the Sublease Letter of Credit to the Landlord. Consent to Sublease, ¶ 5(a).

B. **Calculation of Damages**

13. The Lease states that in the event of a termination of the Lease by the Tenant, the Tenant shall pay to the Landlord the rent owing up to the time of termination. Lease, Section 13.02. Damages for the early termination of the Lease are either, at the election of the

Landlord, (a) a lump sum equal to the present value of the rent that would have been payable over the term of the Lease, in excess of the "aggregate fair rental value" over the same period as estimated by an appraiser, or (b) the amount to be paid by the Tenant over the remaining term of the lease, payable in monthly installments, but reduced by the net rents received by the Landlord from reletting the premises.  Lease, Section 14.01.  In either case, the damages, as stated, are limited to the actual damages incurred by the Landlord, with a credit to the Tenant for any rent received by the Landlord in connection with the premises.

14. The Landlord may look to the Letter of Credit as a security deposit only "to the extent required for the payment of any such Fixed Rent or additional rent or any other sum as to which Tenant is in default or for any sum which Landlord may expend or be required to expend by reason of Tenant's non-performance, non-observance, breach or violation of any of the terms, covenants, conditions or agreements of this Lease . . . ."  Lease, Section 31.01.  Furthermore, the ability of the Landlord to look to the Security Deposit shall "[i]n no event . . . be construed as liquidated damages . . . ." (Lease, Section 31.05), and following the termination of the Lease, the Landlord is required to return the balance of the Security Deposit to the Tenant. Lease, Section 31.02.

15. Currently, and throughout the remaining term of the Lease, the fixed rent that is to be paid by the Subtenant pursuant to the Sublease is higher than the fixed rent that is paid under the Lease (the "**Additional Rent**").  The Consent to Sublease states that once the Subtenant steps into the shoes of the Debtors, after the date of attornment, the Landlord shall receive the greater of the amount paid under the Lease or the Sublease.  Consent to Sublease, ¶ 5(c).

**BASIS FOR RELIEF**

**A.    Rejection of the Lease**

16.    Section 365(a) of the Bankruptcy Code provides, in pertinent part, that a debtor in possession, "subject to the court's approval, may assume or reject any executory contract or unexpired lease of the debtor." 11 U.S.C. § 365(a). "The purpose behind allowing the assumption or rejection of executory contracts is to permit the trustee or debtor-in-possession to use valuable property of the estate and to 'renounce title to and abandon burdensome property.'" In re Orion Pictures Corp., 4 F.3d 1095, 1098 (2d Cir. 1993) (citation omitted); see also In re Ames Dept. Stores, Inc., 306 B.R. 43, 51-52 (Bankr. S.D.N.Y. 2004) ("The ability to reject provides the trustee or debtor-in-possession with the means to relieve the estate of the duty to perform on burdensome obligations at the expense of all of the estate's other creditors, and to avoid the incurrence of additional administrative expenses which lack a corresponding benefit to the estate.").

17.    The standard applied to determine whether the rejection of an executory contract or unexpired lease should be authorized is the "business judgment" standard. See Sharon Steel Corp. v. National Fuel Gas Distribution Corp., 872 F.2d 36, 39-40 (3d Cir. 1989); see also In re Old Carco LLC, 470 B.R. 688, 703–704 (S.D.N.Y. 2012) (business judgment standard "applies when a Bankruptcy Court approves a debtor's assumption or rejection of a contract"); In re Delta Airlines, Inc., 359 B.R. 468, 476 (Bankr. S.D.N.Y. 2006) ("By case law the standard for deciding a motion to reject an executory contract under Section 365(a) is the business judgment rule[.]"). Courts defer to a debtor's business judgment in rejecting an executory contract or unexpired lease, and they generally will not second-guess a debtor's business judgment concerning assumption or rejection. See In re MF Global Holdings Ltd., 466 B.R. 239, 242 (Bankr. S.D.N.Y. 2012); In re Balco Equities Ltd., Inc., 323 B.R. 85, 98 (Bankr.

S.D.N.Y. 2005). Upon finding that a debtor has exercised its sound business judgment, courts regularly approve a request to reject under section 365(a) of the Bankruptcy Code. See NLRB v. Bildisco & Bildisco, 465 U.S. 513, 523 (1984) (recognizing the "business judgment" standard used to approve rejection of executory contracts); In re Penn Traffic Co., 524 F.3d 373, 383 (2d Cir. 2008) (same); see also Delta, 359 B.R. at 476 (business judgment rule "basically means that if [rejection] makes sense for the debtor in the judgment of management, the motion to reject will be granted"); Balco Equities, 323 B.R. at 98 ("A court 'should defer to a debtor's decision that rejection of a contract would be advantageous unless the decision is so unreasonable that it could not be based on sound business judgment, but only on bad faith or whim.'") (quoting In re Sundial Asphalt Co., 147 B.R. 72, 84 (Bankr. E.D.N.Y. 1992)).

18.     Under the Bankruptcy Code, if the lease in question provides a method for calculating damages, the Court should generally follow that procedure. See In re Andover Togs, Inc., 231 B.R. 521, 533 (Bankr. S.D.N.Y. 1999). Additionally, Bankruptcy Courts do not recognize damages from assumption or rejection of leases that are "remote and unforeseeable." In re Child World, Inc., 161 B.R. 349, 353 (Bankr. S.D.N.Y. 1993) (denying claim for damages resulting from assumption of a lease that was "too remote and unforeseeable as to be chargeable to the debtor."). Finally, New York courts have emphasized that upon subtracting actual damages landlords are required to comply with any lease provisions regarding the return of unused security deposit to the former tenants. See, e.g. L. Charney 1410 Broadway, LLC v. Whaling MFG Co. Inc., No. 114259/09, 2012 N.Y. Misc. LEXIS 969, at *12 (N.Y. Sup. Ct. Mar. 1, 2012); Tobin v. Gluck, No. 11-3985, 2015 U.S. Dist. LEXIS 133812, at *88 (E.D.N.Y. Sept. 30, 2015) ("In the absence of express language providing for liquidated damages, deposits are

construed as securities, and a landlord may only resort to the security in the event of breach to the extent of his actual losses.").

19.     The Debtors, in the sound exercise of their business judgment, believe that rejection of the Lease will benefit the Debtors' estates by allowing their estates to avoid unnecessary expenses for services that are no longer needed.  Moreover, the Debtors are not in the business of subleasing space, have no need for the Premises and would like to exit this "middleman" position.  Rejecting the Lease would allow the Debtors to shed the administrative costs of the Lease, without giving rise to any corresponding claim against the estate.

### B.   Estimation of Damages

20.     Here, the Landlord is unable to demonstrate any damages resulting from rejection.  Under the terms of the Lease, upon rejection, the Landlord is only entitled to any actual damages incurred, including a credit for any reletting of the Premises.  Specifically, upon rejection, the Subtenant is obligated to attorn for the full amount of the rent under the Lease, including the Additional Rent, allowing the Debtors to receive a credit in full against any damages resulting from their breach of the Lease.  The Landlord will also stand to benefit from not having to incur any costs to locate a replacement tenant, as well as the approximately $2.7 million in leasehold improvements invested in the Premises by the Debtors and unreimbursed by the Landlord, which will likely increase the future rental value of the Premises beyond the term of the Lease. Additionally, the Debtors will turn over the Sublease Letter of Credit to the Landlord upon rejection, which will provide further security to the Landlord for the balance of the Subtenant's term under the Lease.  Any other damages the Landlord may assert are likely to be remote and unforeseeable.  Indeed, as the Landlord stands to receive the Additional Rent following termination of the Lease, the ***Landlord will actually benefit from rejection***.  Finally,

the Landlord is *explicitly* barred under the terms of the Lease from looking to the Letter of Credit as a form of liquidated damages. Thus, as the Landlord is actually standing to gain from the rejection of the Lease, the Debtors believe that no claim will arise upon rejection.

21. Accordingly, the Debtors respectfully request that the Court estimate at zero dollars any claim for the Landlord arising from rejection of the Lease. Estimation is proper under section 502(c) of the Bankruptcy Code, which provides as follows:

> (c) There shall be estimated for purposes of allowance under this section –
>
> > (1) any contingent or unliquidated claim, the fixing or liquidation of which, as the case may be, would unduly delay the administration of the case; or
> >
> > (2) any right to payment arising from a right to an equitable remedy for breach of performance.

11 U.S.C. § 502(c).

22. Bankruptcy courts may estimate claims in order "to avoid undue delay in the administration of bankruptcy proceedings." Frito-Lay, Inc. v. LTV Steel Co. (In re Chateaugay Corp.), 10 F.3d 944, 957 (2d Cir. 1993). A bankruptcy court can estimate a claim to avoid the need to await the outcome of a lawsuit, and promote a fair distribution to creditors. O'Neill v. Cont'l Airlines, Inc. (In re Cont'l Airlines, Inc.), 981 F.2d 1450, 1461 (5th Cir. 1993). In addition, estimation of a claim under section 502(c)(1) is appropriate if liquidation of a claim "will take too long and unduly delay the distribution of the estate's assets." In re N.Y. Med. Group, P.C., 265 B.R. 408, 415 (Bankr. S.D.N.Y. 2001).

23. Upon rejection, the Landlord will actually benefit from the rejection of the Lease, because it will realize a higher rent from the Premises for the balance of its term. Therefore, the Landlord will not suffer any damages from rejection, and its rejection damages claim should be estimated at zero dollars.

**NOTICE**

24. Notice of this Motion will be given to: (a) the Office of the United States Trustee; (b) proposed counsel to the Committee; (c) counsel to U.S. Bank National Association, as the administrative agent under the Debtors' prepetition secured credit agreements; (d) counsel to the ad hoc group of lenders party to the Debtors' prepetition first lien secured credit agreement; (e) counsel to Crestview Media Investors, L.P., as lender under the Debtors' prepetition first and second lien secured credit agreements; (f) counsel to MediArena Holding B.V., as holder of the Sixth Amended and Restated Senior Unsecured Demand Promissory Note; (g) AP NMT JV Newco B.V., as shareholder of CORE Entertainment Holdings Inc., and/or its counsel, if known; (h) counsel, if known, to the preferred shareholders of CORE Entertainment Holdings Inc.; (i) the United States Attorney's Office for the Southern District of New York; (j) the Internal Revenue Service and state taxing authorities for states in which the Debtors conduct business; (k) those unions who have entered into collective bargaining agreements and/or letters of adherence with the Debtors; (l) counsel to the Landlord; (m) counsel to the Subtenant; and (n) those parties who have filed a notice of appearance in these cases. The Debtors submit that, under the circumstances, no other or further notice is required.

25. No previous motion for the relief requested herein has been made to this or to any other court.

*The remainder of this page is intentionally left blank.*

## **CONCLUSION**

WHEREFORE, the Debtors respectfully request the Court enter an order substantially in the form annexed hereto as Exhibit B, (a) authorizing the Debtors to reject the Lease, (b) estimating the resulting rejection damage claim, and (c) granting such other and further relief as the Court may deem just or proper.

Dated: June 14, 2016
         New York, New York

         WILLKIE FARR & GALLAGHER LLP
         *Counsel for the Debtors and*
         *Debtors in Possession*


        By: /s/ Paul V. Shalhoub
         Matthew A. Feldman
         Paul V. Shalhoub
         Andrew S. Mordkoff

         787 Seventh Avenue
         New York, New York 10019
         Telephone: (212) 728-8000
         Facsimile: (212) 728-8111