**Hearing Date: June 28, 2016 at 10:00 a.m. (Eastern time)**
**Objection Deadline: June 21, 2016 at 4:00 p.m. (Eastern time)**

DENTONS US LLP
Carole Neville
James Copeland
1221 Avenue of the Americas
New York, NY 10020
Telephone:    (212) 768-6700
Facsimile:    (212) 768-6800
Email: carole.neville@dentons.com
Email: james.copeland@dentons.com

*Counsel for Santander Asset Finance PLC*

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| AOG Entertainment, Inc., *et al.* | ) | Case No. 16-11090 (SMB) |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | |

**LIMITED OBJECTION OF SANTANDER ASSET FINANCE PLC TO DEBTORS' MOTION FOR AN ORDER UNDER 11 U.S.C. §§ 105, 361, 362, 363(c), 364(c), 364(d), 364(e) AND 507 AND FED. R. BANKR. P. 2002, 4001 AND 9014: (I) AUTHORIZING DEBTORS TO OBTAIN POSTPETITION FINANCING; (II) AUTHORIZING DEBTORS TO CONTINUE TO USE CASH AND/OR CASH COLLATERAL; (III) GRANTING ADEQUATE PROTECTION TO PREPETITION SECURED PARTIES; AND (IV) GRANTING RELATED RELIEF [*DOC. #67*]**

Santander Asset Finance PLC ("SAF"), by and through its undersigned counsel, hereby files this limited objection ("**Objection**") to the Debtors' Motion for an Order under 11 U.S.C. §§ 105, 361, 362, 363(c), 364(c), 364(d), 364(e) and 507 and Fed. R. Bankr. P. 2002, 4001 and 9014: (I) Authorizing Debtors to Obtain Postpetition Financing [the "**DIP Loan**"]; (II) Authorizing Debtors to Continue to Use Cash and/or Cash Collateral; (III) Granting Adequate

Protection to Prepetition Secured Parties; and (IV) Granting Related Relief [Doc. #67] (the "**DIP Motion**")[1] and states as follows:

## SUMMARY OF THE OBJECTION

1.      The DIP Loan is apparently intended to include a bank account (the "Santander Account") held in the name of Double Vision Ltd ("Double Vision") in Santander Bank as collateral for the DIP Loan even though Double Vision has, at best, only bare legal title to the account and no equitable interest in the account funds.   As a  result of a complex transaction in 2003, SAF was granted complete control over disbursements from the Santander Account, which was funded by a third party as security for and payment of obligations to SAF.

2.       The Santander Account was established as part of transaction in May 2003 relating to the financing by Delphi Partners Ltd. ("Delphi") with funds borrowed from SAF (formerly known as Sovereign Finance Plc) for the production of the film *Seeing Double* by Double Vision.  Delphi purchased the film, then leased it back to Double Vision.  On the same date, Delphi assigned its interest in the lease, its security for lease payments, including a letter of credit issued for Delphi's benefit (the "Delphi LC"), and its interests in certain banks accounts, including the Santander Account in Double Vision's name, set up to receive payments and disburse proceeds of the Delphi LC to SAF.   Also on the same date, Double Vision granted SAF a charge on the Santander Account that, among other things, authorizes SAF sole authority to direct payments from the account in its name and prohibits Double Vision from accessing or pledging the funds in that account.   As a result of the transaction, SAF holds a valid, first-priority lien on and complete control over a blocked Santander Account that has been funded

---

[1] SAF will be filing for permission to file this objection past the deadline and to have this objection heard on June 28, 2016 on the grounds that it has not been served with any notices of the bankruptcy and did not know of the Debtors' intention to pledge the Santander Account (defined herein)  until it retained counsel  to address issues relating to payments from the Santander Account.

100139000\V-1

solely with the proceeds of the Delphi LC.  The transaction, described in greater detail below, is governed entirely by English law.[2]

3.    These facts, as they will be evidenced by the documents[3], are sufficient to establish that the account and its proceeds are not property of the estate.  For purposes of the DIP Motion, SAF seeks to have the account carved out of any order approving the DIP Loan to the extent that the account and its funds are not property of the estate and to ensure that nothing in the  order determines ownership of the account.  Specifically, SAF has requested that the following provision be included in the order approving the DIP motion:

> Santander Account. The liens, superpriority claims and related rights granted hereunder are solely with respect to property of the Debtors' estates, as determined pursuant to section 541 of the Bankruptcy Code, and not with respect to any property interest that does not constitute property of the Debtors' estates. Without limiting the foregoing, nothing herein shall constitute a determination of the extent to which, if at all, any property, or any property that may be owned by Santander Asset Finance PLC ("SAF") , subject to a lien, or constructive, implied, resulting or other form of trust or an equitable lien in favor SAF, and the rights of all parties with respect thereto are fully preserved. Additionally, if a final, non-appealable order shall be entered finding that any portion of the cash collateral referenced in this Final Order was of the Petition Date SAF property or for any reason not property of the Debtors' estates, then nothing in this Final Order shall preclude the Court from granting appropriate relief in connection therewith.

## **FACTUAL BACKGROUND**

The Chapter 11 Cases

4.    On April 28, 2016 (the "Petition Date"), AOG Entertainment, Inc. ("AOG") and approximately 50 purportedly affiliated entities, including Double Vision, filed chapter 11 petitions with this Court.  According to the organizational chart attached to the Declaration of

---

[2] Double Vision and Delphi are both organized under English law.
[3] SAF is collecting the documents to trace the funds into the Santander Account and demonstrate the intention of the parties to guaranty repayment to SAF.

3

Peter Hurwitz filed in Support of the Chapter 11 Petitions and First Day Pleadings [ECF #3], Double Vision is at the far end of the UK family chain; it is a direct subsidiary of 19 Productions Ltd, and an indirect subsidiary of 19 Entertainment Ltd., all of which are companies organized English law.

5.       Soon after the Petition Date, the Debtors sought authority to use cash collateral and to obtain post petition financing.  SAF was not given notice of the Debtors' requests.  After an initial hearing, on June 3, 2016, the Court entered the Interim Order Under U.S.C. §§ 105, 361, 362,363(c), 364(c), 364(d), 364(e)  And 507 and Bankruptcy Rules 20002, 4001 and 9014 (I) Authorizing the Debtors To Obtain Post Petition Financing, (II) Authorizing the Debtors To Continue To Use Cash and/or Cash collateral, (III) Granting Adequate Protection To PrePetition Secured Parties and (IV) Granting Related Relief. [ECF#12].  The Santander Account was carved out the relief granted at the request of Sony Pictures, the distributor of Seeing Double.

6.       On May 16, 2016, the Debtors filed the DIP Motion.  The hearing on the DIP Motion was originally scheduled for June 2, 2016, 10:30 a.m. with objections due on May 26, 2016 at 4:00 p.m.  It was rescheduled for June 28, 2016 with objections due June 21, 2016.  SAF was not served with notice of the DIP Motion, the hearing date or the rescheduled hearing date.

7.       SAF has been attempting to work with the Debtors to obviate the need for this Court's intervention.  However, to date SAF and the Debtors have not reached an agreement. As a result, SAF was compelled to file this limited objection.

The Transaction

8.       The transactions relating to the financing of Seeing Double were entered into almost 13 years before the filing of the Chapter 11 cases. The structure, which follows a fairly common pattern for the financing of British films, was intended, among other things,  to capture

4

certain tax and financing benefits for the producers and investors in the film industry under English law.

9.      Pursuant to Loan Agreements dated March 3, 2003, Delphi borrowed funds from Sovereign Finance Plc (the "Bank"), the legal predecessor of SAF, for the purchase of the Seeing Double from Double Vision.  Delphi then leased the film to Double Vision for a fifteen year term.

10.     As security for the repayment of the loans under the Loan Agreements, pursuant to the Charge over Cash Deposit and Deed of Assignment dated May 29, 2003[4], Delphi, *inter alia*:

(a)     assigned to the Bank the entire benefit of the Lease Agreement with Double Vision and directed Double Vision to make all rental payments to an account (the "Delphi Deposit Account") maintained at Girobank PLC ("Girobank")[5] in Delphi's name for the benefit of the Bank;

(b)     granted a charge in favor of the Bank on the Delphi Deposit Account; and

(c)     assigned to the Bank a Letter of Credit ("LC") that Double Vision had procured to be granted by HBOS plc in favor of Delphi to cover the lease rental payment obligations under the Lease Agreement.  In the notice of assignment of the LC to HBOS plc, Delphi and the Bank directed HBOS plc to pay the annual LC proceeds into the Delphi Deposit Account, or any other account directed by the Bank.  The LC provided that upon the Bank's exercise of its right of security review that the Net Balance (as defined in the LC) would be paid into the Santander Account.

---

[4] A true and correct copy of the Charge is annexed hereto.
[5] Girobank is now a  Santander bank.

5

11.     The Bank exercised its right of security review in 2008 and at that point, the Net Balance was paid into the Santander Account.

12.     On May 29, 2003, as security for the payment of lease/loan obligation pursuant to a second Charge Over Cash Deposit and Account (the "Double Vision Charge"), Double Vision, inter alia:

(a)     granted the Bank a charge over its account (the Santander Account)  also maintained at Girobank;

(b)     granted the Bank the right to direct transfers from the Double Vision Account and restricted Double Vision's  rights and access to the account.  Pursuant to section 3.2.1 of the Charge, the Bank, has the absolute right to require Girobank to transfer amounts to it for application to the secured liabilities.  Pursuant to section 3.2.5 of the Double Vision Charge, Double Vision was estopped from withdrawing any part of the balance from the account or assigning any part of its rights with respect to the account to any person.

13.     The Charge was duly registered with Companies House.[6]  Although the initial deposit in the account was nominal to establish the account, the deposit into this account at the point of the security review was intended to accrue interest sufficient with the deposit to pay the lease/loan obligations.  The finances work out so there will be nothing left in the account after SAF is paid in full.

14.     As a result of the transaction, Santander holds both a valid, first-priority lien on and control over a blocked bank account in the name of Double Vision funded by the proceeds of the Delphi LC , and a valid, first priority lien on and control over a blocked bank account in the

---

[6] Copies of the Double Vision Charge and its registration are annexed hereto as Exhibit B.

100139000\V-1

name of Delphi to which payments in satisfaction of the obligations of Delphi and Double Vision to SAF are made.

## **OBJECTION AND RELATED RELIEF**

15.    Double Vision is not free to use the Santander Account proceeds for its own benefit or to secure the DIP loans by law or contract.

16.    Under Section 541(d) of the Bankruptcy Code, "[p]roperty in which the debtor holds, as of the commencement of the case, only legal title and not an equitable interest . . . becomes property of the estate . . . *only to the extent of the debtor's legal title to such property, but not to the extent of any equitable interest in such property that the debtor does not hold*" (emphasis added).  To the extent that Double Vision holds only bare legal title in the Santander Account, it is not considered to be property of the estate. *See Begier v. IRS*, 486 U.S. 53, 59 (1990) ("Because the debtor does not own an equitable interest in property he holds in trust for another, that interest is not 'property of the estate.' ").  For funds held in a bank account to be considered property of the estate, the debtor must exercise the indicia of ownership, including the unfettered discretion to pay creditors of its choosing.  *See e.g. Enron Corp. v. Granite Constr. Co. (In re Enron Corp.)*, Adv. Pro. No. 03-93172 (AJG), 2006 Bankr. LEXIS 4650. *16  (Bankr. S.D.N.Y. May 11, 2006)( "Courts have generally held that for certain funds held in a bank or checking account to be considered property of the estate the debtor must have the requisite control over those funds.") citing  *In re Southmark Corp.*, 49 F.3d 1111, 1117 (5th Cir. 1995), *Coral Petroleum, Inc. v. Banque Paribas-London*, 797 F.2d 1351, 1358 (5th Cir.1986), *In re Coutee*, 984 F.2d 138, 141 & n. 3 (5th Cir.1993), *In re Kemp Pac. Fisheries, Inc.*, 16 F.3d 313, 316-17 (9th Cir.1994), and *In re Chase & Sanborn Corp.*, 813 F.2d 1177, 1181 (11th Cir.1987).

100139000\V-1

17.    In this case. SAF exercises control over the account.  Moreover, the funds in the account were deposited there from the Delphi LC for the benefit of SAF.  As stated above, Double Vision agreed in the Double Vision Charge to cede control over the account to SAF and refrain from accessing or permitting any liens to attach to the account.

18.    SAF is in the process of collecting the documents to trace the flow of funds from the Delphi LC to the Santander Account.  In the interim, it requests that any order entered by the Court approving the DIP loans contain the provision cited above to preserve SAF interests and ownership claims to the Santander account.

## **CONCLUSION**

WHEREFORE, for the above reasons, SAF requests that the Court: (1) sustain this Objection; (2) to the extent necessary, include language in any order granting the DIP Motion that reserves the issue of ownership so as not to prejudice SAF and carve out the Santander Account from DIP collateral; and (3) grant to SAF all further relief that is just and proper.

Dated: New York, New York
       June 26, 2016


                              DENTONS US LLP

                              By:    _/s/Carole Neville____
                              Carole Neville
                              1221 Avenue of the Americas
                              New York, New York 10020
                              Telephone:  (212) 768-6700
                              Telecopy:  (212) 768-6800
                              Email:  carole.neville@dentons.com

                              *Counsel for Santander Asset Finance PLC.*

8

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on June 26, 2016, a true and correct copy of the foregoing Limited Objection of Santander Asset Finance PLC. to Debtors' Motion for an Order Under 11 U.S.C. §§ 105, 361, 362, 363(c), 364(c), 364(d), 364(e) and 507 and Fed. R. Bankr. P. 2002, 4001 and 9014: (I) Authorizing Debtors to Obtain Postpetition Financing; (II) Authorizing Debtors to Continue to Use Cash an d/Or Cash Collateral; (III) Granting Adequate Protection to Prepetition Secured Parties; and (IV) Granting Related Relief [Doc. #67], was served by e-mail upon the parties authorized to receive electronic notice in these cases pursuant to the Court's ECF filing system, including counsel to U.S. Bank, ad hoc group of lenders party to the First Lien Term Loan Agreement, Crestview Media Investors, L.P. , MediArena Holding B.V., AP NMT JVNewco B.V. , counsel  to the preferred shareholders, among others.

        *s/ Carole Neville*
        Carole Neville