Matthew A. Feldman
Paul V. Shalhoub
Andrew S. Mordkoff
WILLKIE FARR & GALLAGHER LLP
787 Seventh Avenue
New York, New York 10019
Telephone: (212) 728-8000
Facsimile: (212) 728-8111

*Counsel for the Debtors and
Debtors in Possession*

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------x
| | | |
|---|---|---|
| In re: | : | Chapter 11 |
| | : | |
| AOG Entertainment, Inc., et al.,[1] | : | Case No. 16-11090 (SMB) |
| | : | |
| Debtors. | : | (Jointly Administered) |

---------------------------------------------------------x

# DEBTORS' REPLY TO THE OBJECTION TO DEBTORS' MOTION FOR ORDER UNDER SECTIONS 365(A) AND 502 OF THE BANKRUPTCY CODE, BANKRUPTCY RULE 6006 AND LOCAL BANKRUPTCY RULE 6006-1: (A) AUTHORIZING REJECTION OF LEASE AGREEMENT WITH 900 THIRD AVENUE, L.P.; (B) ESTIMATING RESULTING REJECTION DAMAGE CLAIM; AND (C) GRANTING RELATED RELIEF

TO THE HONORABLE STUART M. BERNSTEIN:

The debtors and debtors in possession in the above-captioned cases (collectively, the "**Debtors**"), by and through their undersigned counsel, hereby submit this reply (the "**Reply**")[2] in response to the objection (the "**Objection**") of Third Avenue, L.P. (the "**Landlord**") to the Debtors' Motion for Order Under Sections 365(a) and 502 of the Bankruptcy

---

[1] A list of the Debtors in these chapter 11 cases and the last four digits of each Debtor's taxpayer identification number is attached as Schedule 1 to the Declaration of Peter Hurwitz, President of Certain Debtors, in Support of Chapter 11 Petitions and First Day Pleadings, [Docket No. 3] and at http://www.kccllc.net/AOG. The Debtors' executive headquarters are located at 8560 West Sunset Boulevard, 8th Floor, West Hollywood, CA 90069.

[2] Capitalized terms not defined herein have the meanings given them in the Motion.

Code, Bankruptcy Rule 6006 and Local Bankruptcy Rule 6006-1: (a) Authorizing Rejection of Lease Agreement with 900 Third Avenue, L.P.; (b) Estimating Resulting Rejection Damage Claim; and (c) Granting Related Relief (the "**Motion**") [Docket No. 135].

## BACKGROUND

1. On April 28, 2016 (the "**Petition Date**"), each of the Debtors filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code. The Debtors are continuing in the possession of their respective properties and the management of their respective businesses as debtors in possession pursuant to sections 1107 and 1108 of the Bankruptcy Code. These chapter 11 cases have been consolidated for procedural purposes only.

2. On May 17, 2016, an official committee of unsecured creditors (the "**Committee**") was appointed in these cases. As of the date hereof, no trustee or examiner has been appointed in any of the Debtors' cases.

3. The events leading up to the Petition Date and the facts and circumstances supporting the relief requested herein are set forth in the First Day Declaration.

4. On June 14, 2016, the Debtors filed the Motion. On June 21, 2016, the Landlord filed the Objection to the Motion [Docket No. 155].

## REPLY TO OBJECTION

5. The Debtors wish to exit the "middleman" position between the Landlord and the Subtenant with minimal disruption and as expeditiously as possible, all while maximizing value to the estate.

6. To that end, the Debtors agree that the Lease should be rejected as of the date of entry of the Order[3]. Additionally, once all outstanding issues relating to the rejection of

---

[3] The Debtors have paid the Landlord the full base rent for June. An order rejecting the Lease entered on or about the hearing date will ensure that the Debtors' administrative obligations under the Lease are satisfied.

-2-

the Lease are resolved, the Debtors intend to comply with the Consent to Sublease and turn over the Sublease Letter of Credit to the Landlord. However, the Debtors believe it would be premature to turn over the Sublease Letter of Credit, a valuable estate asset, until the resolution of all issues relating to the rejection of the Lease occurs.

7. Additionally, and with the same goal of resolving this situation as expeditiously as possible, the Debtors reiterate that the Landlord's rejection damages claim should be estimated. While the Landlord argues in the Objection that estimation is premature, it cannot show that estimation is inappropriate in this case. Instead, the Landlord points to $11,959.30 in arrears (the "**Arrears**") that are in fact simply expenses that have accrued since the beginning of the month of June that have already either been pre-paid by the Tenant or will likely be paid by the Subtenant following the rejection of the Lease. More importantly, however, the Arrears, to the extent not resolved by the date of rejection, are distinct from the damages provisions provided by the Lease relating to rent, which is the primary source of damages and will require estimation.

8. Given that estimation will ultimately be required in this case to resolve the Landlord's rejection damages claim, the Debtors respectfully request that such claim be estimated at the omnibus hearing currently scheduled for July 21, 2016. Estimation at such time will give the Landlord sufficient opportunity to argue for any rejection damages it may be owed, and also will be after the Tenant, Landlord, and Subtenant have completed the series of transactions contemplated by the Lease, Sublease and Consent to Sublease for the month of June, providing a more complete picture of any rejection damages that may be owed by the Debtors, including the curing of the Arrears in the ordinary course.

9.  As discussed in the Motion, the Lease contains two possible provisions for damages.  Lease, Section 14.01.  Should the Lease be terminated, the Tenant owes to the Landlord either, at the election of the Landlord, (a) a lump sum which is equal to the present value of the rent that would have been payable over the term of the Lease, that is in excess of the "aggregate fair rental value" over the same period as determined by an appraiser, or (b) the amount to be paid by the Tenant over the remaining term of the lease, payable in monthly installments, but reduced by the net rents received by the Landlord from re-letting the premises.  Estimation is required for either method of damages.

10.  Should the Landlord choose to argue for damages under the Lease's first method of calculating damages, the parties would need to obtain an appraiser to determine the fair rental value of the premises for the remainder of the Lease.  This claim would be unliquidated, as it is not "subject to 'ready determination and precision in computation of the amount due.'"  In re Mazzeo, 131 F.3d 295, 304 (2d Cir. 1997) (quoting In re Fostvedtr, 823 F.2d 305, 305 (9th Cir. 1987)).  Furthermore, such an appraisal will unduly delay administration of the estate, and therefore is subject to estimation under section 502(c).  See In re N.Y. Med. Group, P.C., 265 B.R. 408, 415 (Bankr. S.D.N.Y. 2001).  The Debtors submit however, that such damages under this first theory should be estimated at zero, as it is obviously demonstrated by the existence of the Subtenant *currently paying higher rent* that the fair rental value of the premises is greater than the value of the rent that would have been due under the Lease.

11.  Furthermore, should the Landlord choose to proceed under the Lease's second method of calculation of damages, the only possible claim for damages would be based on a theory of a future default by the Subtenant.  However, Bankruptcy Courts do not recognize damages from assumption or rejection of leases that are "remote and unforeseeable."  In re Child

-4-

World, Inc., 161 B.R. 349, 353 (Bankr. S.D.N.Y. 1993) (denying claim for damages resulting from assumption of a lease that was "too remote and unforeseeable as to be chargeable to the debtor."). Thus, no claim would be possible from this set of facts. Were the Landlord to assert this as a claim regardless, such a claim would be contingent, as it would be based upon a future event that has not yet occurred. See Olin Corp. v. Riverwood Int'l (In re Manville Forest Prods.), 209 F.3d 125, 128-29 (2d Cir. 2000). Thus, any claim brought under this second method of calculation of damages should also be subject to estimation.

## **CONCLUSION**

WHEREFORE, for the reasons set forth herein, the Debtors respectfully request that the Court approve the relief requested herein and overrule the Objection.

Dated: June 27, 2016
      New York, New York

                            WILLKIE FARR & GALLAGHER LLP
                            *Counsel for the Debtors and*
                            *Debtors in Possession*

                           By: /s/ Matthew A. Feldman
                              Matthew A. Feldman
                              Paul V. Shalhoub
                              Andrew S. Mordkoff

                              787 Seventh Avenue
                              New York, New York 10019
                              Telephone:  (212) 728-8000
                              Facsimile:  (212) 728-8111