Matthew A. Feldman
Paul V. Shalhoub
Robin Spigel
Andrew S. Mordkoff
WILLKIE FARR & GALLAGHER LLP
787 Seventh Avenue
New York, New York 10019
Telephone: (212) 728-8000
Facsimile: (212) 728-8111

*Counsel for the Debtors and*
*Debtors in Possession*

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------x

| | | |
|---|---|---|
| In re: | : | Chapter 11 |
| | : | |
| AOG Entertainment, Inc., et al.,[1] | : | Case No. 16-11090 (SMB) |
| | : | |
| Debtors. | : | (Jointly Administered) |

-------------------------------------------------------x

## DEBTORS' REPLY IN SUPPORT
## OF APPROVAL OF DISCLOSURE STATEMENT FOR FIRST AMENDED
## JOINT CHAPTER 11 PLAN OF REORGANIZATION FOR AOG
## ENTERTAINMENT, INC. AND ITS AFFILIATED DEBTORS

---

[1]    A list of the Debtors in these chapter 11 cases and the last four digits of each Debtor's taxpayer identification number is attached as Exhibit A to the Plan (as defined below) and listed at http://www.kccllc.net/AOG.  The Debtors' executive headquarters are located at 8560 West Sunset Boulevard, 8th Floor, West Hollywood, CA 90069.

## TABLE OF CONTENTS

Page

PRELIMINARY STATEMENT ........................................................................................1

RELEVANT FACTS ......................................................................................................2

REPLY ........................................................................................................................3

   A.     Standard for Approval of the Disclosure Statement ........................................3

   B.     The Disclosure Statement Contains
           Adequate Information and Should Be Approved ............................................5

   C.     The Committee Objection Should Be Overruled............................................6

     i.    The Lenders' Deficiency Claims .................................................................7

        (a)    The Ability of Class 5 (General Unsecured Claims) to Obtain an Increased
              Recovery if it Votes in Favor of the Plan is Not Illusory .......................7

        (b)    The Definition of General Unsecured Claim Does Not Need Clarification ............9

     ii.   The Disclosure Statement Contains
          Adequate Information Regarding the Releases........................................10

     iii.  Committee Exculpation .............................................................................12

     iv.  The Committee's Request to Include a Recommendation Letter in the
          Solicitation Materials Should Be Denied................................................13

CONCLUSION............................................................................................................15

# **TABLE OF AUTHORITIES**

**Cases**                                                                                         **Page(s)**

In re 266 Washington Assocs.,
        141 B.R. 275 (Bankr. E.D.N.Y. 1992)........................................................  4

In re Adelphia Commc'ns Corp.,
        352 B.R. 592 (Bankr. S.D.N.Y. 2006)......................................................  4

In re Ashley River Consulting, LLC,
        No. 14-13406 (MG), 2015 WL 6848113 (Bankr. S.D.N.Y. Nov. 6, 2015)................  3

In re Cardinal-Congregate I,
        121 B.R. 760 (Bankr. S.D. Ohio 1990)......................................................  4, 7

In re Copy Crafters Quickprint, Inc.,
        92 B.R. 973 (Bankr. N.D.N.Y. 1988) .......................................................  4

In re Drexel Burnham Lambert Grp. Inc.,
        No. 09 B 10421, 1992 WL 62758 (Bankr. S.D.N.Y. Mar. 5, 1992)..........................  12

In re E. Maine Elec. Coop., Inc.,
        125 B.R. 329 (Bankr. D. Me. 1991)..........................................................  4

In re Ellipso, Inc.,
        No. 09-00148, 2012 WL 368281 (Bankr. D.D.C. Feb. 3, 2012) ...............................  7

In re Genco Shipping & Trading Ltd.,
        513 B.R. 233 (Bankr. S.D.N.Y. 2014)........................................................  12

Kirk v. Texaco, Inc.,
        82 B.R. 678 (S.D.N.Y. 1988)................................................................  3

Momentum Mfg. Corp. v. Emp. Creditors Comm. (In re Momentum Mfg. Corp.),
        25 F.3d 1132 (2d Cir. 1994)................................................................  3

In re MPM Silicones, LLC,
        No. 14-22503-RDD, 2014 Bankr. LEXIS 3926 (Bankr. S.D.N.Y. Sept. 9, 2014) .....  12

In re Phoenix Petroleum Co.,
        278 B.R. 385 (Bankr. E.D. Pa. 2001) .......................................................  4

In re Quigley Co.,
        337 B.R. 110 (Bankr. S.D.N.Y. 2007) .......................................................  12

In re U.S. Brass Corp.,
        194 B.R. 420 (Bankr. E.D. Tex. 1996) .....................................................  4

In re Valrico Square Ltd. P'ship,
      113 B.R. 794 (Bankr. S.D. Fla. 1990) ........................................................................  4

The debtors and debtors in possession in the above-captioned cases (collectively, the "**Debtors**")[1] submit this reply (the "**Reply**") in response to the objection filed by the official committee of unsecured creditors [Docket No. 232] (the "**Committee Objection**") to the:

(a) *Disclosure Statement for Joint Chapter 11 Plan of Reorganization for AOG Entertainment, Inc. and Its Affiliated Debtors*, dated June 17, 2016 [Docket No. 145] (as the same may be amended, modified and/or supplemented from time to time, the "**Disclosure Statement**"), and

(b) *Debtors' Motion for Order: (A) Approving Disclosure Statement; (B) Establishing Date of Confirmation Hearing; (C) Establishing Procedures for Solicitation and Tabulation of Votes to Accept or Reject Plan, Including (I) Approving Form and Manner of Solicitation Packages, (II) Approving Form and Manner of Notice of Confirmation Hearing, (III) Establishing Record Date and Approving Procedures for Distribution of Solicitation Packages, (IV) Approving Forms of Ballots, (V) Establishing Deadline for Receipt of Ballots, and (VI) Approving Procedures for Vote Tabulations; (D) Establishing Deadline and Procedures for Filing Objections to Confirmation of Plan; (E) Approving Rights Offering Procedures; and (F) Granting Related Relief*, dated July 6, 2016 [Docket No. 193] (the "**Disclosure Statement Motion**").  In support of the Reply, the Debtors respectfully represent as follows:

## PRELIMINARY STATEMENT

1.      The question before the Court is a narrow one — whether the Disclosure Statement contains "adequate information" as defined in section 1125(a)(1) of the Bankruptcy Code for holders of Claims entitled to vote to make an informed decision regarding whether to vote to accept or reject the Plan.  The Debtors submit that the Disclosure Statement easily meets this standard.

---

[1]      Capitalized terms used in this Reply but not defined herein have the meanings given them elsewhere in the Reply, Plan or Disclosure Statement (each as defined below), as applicable.

2.      The Plan is the culmination of the Debtors' arm's-length negotiations with the Consenting Lenders, representing holders of 100% of the debt outstanding under both the First Lien Term Loan Agreement and the Second Lien Term Loan Agreement, and designed to substantially de-lever the Debtors' balance sheet, including through the re-investment of approximately $18 million by certain First Lien Lenders pursuant to the Rights Offering provided for under the Plan.  To assist creditors in interpreting the terms of the Plan, and to provide information regarding, among other things, potential creditor recoveries under the Plan and the risks associated with the Plan, the Debtors submitted the Disclosure Statement to this Court for approval.  Put simply, the Debtors are poised and anxious to move these cases forward to conclusion.

3.      The only objection to the Disclosure Statement was filed by the Committee.  As discussed below, the majority of issues raised by the Committee are plan confirmation objections rather than objections to the adequacy of the information contained in the Disclosure Statement.  None of the confirmation issues raised, either individually or together, render the Plan unconfirmable as a matter of law, and therefore are more appropriately addressed in connection with the confirmation of the Plan.

4.      To facilitate the Court's consideration of the Committee Objection and the Debtors' responses thereto, the remainder of this Reply addresses threshold issues regarding the standards for approving a disclosure statement and the proper scope of the issues to be considered at the Disclosure Statement Hearing, as well as the specific issues raised by the Committee Objection.

## **RELEVANT FACTS**

5.      On June 17, 2016, the Debtors filed initial versions of the *Joint Chapter 11 Plan of Reorganization for AOG Entertainment, Inc. and Its Affiliated Debtors* [Docket No.

144] (as the same may be amended, modified and/or supplemented from time to time, the

"**Plan**") as well as the related Disclosure Statement [Docket No. 145].  Contemporaneously

herewith, the Debtors filed: (a) updated versions of the Plan and Disclosure Statement, as well as

redlines reflecting changes to the initial versions filed on June 17, 2016; and (b) a revised

proposed order granting the Disclosure Statement Motion, including approving the Disclosure

Statement, which includes revised forms of ballots for voting to accept or reject the Plan, as well

as redlines reflecting changes to the initial versions filed on July 6, 2016.

## REPLY

### A.    Standard for Approval of the Disclosure Statement

6.    Pursuant to section 1125 of the Bankruptcy Code, a disclosure statement

used to solicit votes on a Plan must contain "adequate information" — a standard that the

Disclosure Statement here satisfies.  Section 1125(a)(1) of the Bankruptcy Code defines

"adequate information" as:

> information of a kind, and in sufficient detail, as far as is reasonably
> practicable in light of the nature and history of the debtor and the
> condition of the debtor's books and records, including a discussion of the
> potential material Federal tax consequences of the plan to the debtor, any
> successor to the debtor, and a hypothetical investor typical of the holders
> of claims or interests in the case, that would enable such a hypothetical
> investor of the relevant class to make an informed judgment about the
> plan . . . .

11 U.S.C. § 1125(a)(1).  Thus, a debtor's disclosure statement must, as a whole, provide

information that is "reasonably practicable" to permit an "informed judgment" by creditors and

interest holders entitled to vote on the plan.  See Momentum Mfg. Corp. v. Emp. Creditors

Comm. (In re Momentum Mfg. Corp.), 25 F.3d 1132, 1136 (2d Cir. 1994); see also Kirk v.

Texaco, Inc., 82 B.R. 678, 681 (S.D.N.Y. 1988); In re Ashley River Consulting, LLC, No. 14-

13406 (MG), 2015 WL 6848113 at *8 (Bankr. S.D.N.Y. Nov. 6, 2015) ("[A] disclosure

statement is intended to be a source of factual information upon which one can make an

informed judgment about a reorganization plan, and not an advertisement or a sales brochure.")

(internal quotations marks omitted); In re Adelphia Commc'ns Corp., 352 B.R. 592, 600 (Bankr.

S.D.N.Y. 2006) (noting that "an adequate disclosure determination requires a bankruptcy court to

find not just that there is enough information, but also that what is said is not

misleading").

      7.     Further, it is widely acknowledged that the disclosure statement hearing

should not be converted into a premature hearing on plan confirmation, and that courts should

only hear objections to a plan at a disclosure statement proceeding where the plan "is so fatally

flawed that confirmation is impossible." In re Cardinal-Congregate I, 121 B.R. 760, 764 (Bankr.

S.D. Ohio 1990); see also In re Phoenix Petroleum Co., 278 B.R. 385, 394 (Bankr. E.D. Pa.

2001) (noting that courts should only hear confirmation issues at a disclosure statement hearing

"if the described plan is fatally flawed so that confirmation would not be possible"); In re U.S.

Brass Corp., 194 B.R. 420, 422 (Bankr. E.D. Tex. 1996) (court must be careful so as not to

convert disclosure statement hearing into confirmation hearing).

      8.     Plan confirmation issues give rise to valid disclosure statement objections

only if the relevant plan is inherently flawed and clearly facially unconfirmable; that is,

solicitation would be a "clearly fruitless venture." In re Valrico Square Ltd. P'ship, 113 B.R.

794, 796 (Bankr. S.D. Fla. 1990); see also In re 266 Washington Assocs., 141 B.R. 275, 288

(Bankr. E.D.N.Y. 1992) (disclosure statement not approved where plan has patent legal defects

and is not confirmable); In re E. Maine Elec. Coop., Inc., 125 B.R. 329, 333 (Bankr. D. Me.

1991) (disclosure statement describes plan with fatal deficiencies and stark absence of good

faith); In re Copy Crafters Quickprint, Inc., 92 B.R. 973, 981 (Bankr. N.D.N.Y. 1988) (plan too

speculative).  At this stage, only the adequacy of the information provided in the Disclosure

Statement need be addressed.

9.    The alleged defects in the Disclosure Statement identified by the

Committee, to the extent not already resolved, are illusory, immaterial, or are Plan confirmation

objections.  For the reasons set forth below and in the Disclosure Statement Motion, the

Disclosure Statement, as amended to address certain of the Committee's issues and to reflect

various updates and Plan changes, satisfies the "adequate information" standard of section

1125(a)(1) of the Bankruptcy Code.

**B.    The Disclosure Statement Contains
Adequate Information and Should Be Approved**

10.    The Disclosure Statement contains adequate information and should be

approved.  The Disclosure Statement contains approximately 125 pages of disclosure, plus

exhibits, for parties in interest to consider in voting on the Plan.  It includes, among other things,

a summary of the Plan and the classification and treatment of claims and interests thereunder

(Article II), a description of the Debtors and their businesses, history and prepetition corporate

and capital structure (Article III), valuation information (Article VII and Exhibit 5), a summary

of events that occurred before and during these cases and leading up to the formulation of the

Plan (Articles IV and X), risk factors relating to the Debtors' bankruptcy cases, their businesses

generally, and other matters (Article XI), a liquidation analysis comparing creditor recoveries

under the Plan to recoveries in a chapter 7 scenario (Exhibit 2), and financial projections for the

Reorganized Debtors (Exhibit 3).  Such information is more than sufficient to permit creditors to

cast an informed vote to accept or reject the Plan.

C.      **The Committee Objection Should Be Overruled**[2]

11.      It is not entirely clear what the Committee's objections are to the

Disclosure Statement.  To the extent the Debtors are properly identifying the Committee's

objections, the Debtors believe they can be grouped into the following four buckets:

(i)      The Plan improperly allows the First Lien Lenders and the Second
Lien Lenders (collectively, the "Lenders") to vote their deficiency
claims in Class 5 (i.e., a plan classification issue);

(ii)      The Plan includes inappropriate third-party releases and all
creditors should be able to opt-out of such releases;

(iii)      The Plan exculpation provision impermissibly limits the
Committee, its members and its professionals from being
exculpated in connection with the Debtors' restructuring; and

(iv)      The Committee should be permitted to include a negative
solicitation letter in the Class 5 solicitation package.

Committee Objection, ¶¶ 42-49.  Each of the objections in (i) – (iii) are misplaced as they

challenge Plan provisions and, thus, are premature confirmation objections.  In addition, the

Debtors believe it is inappropriate for the Committee to include the proposed solicitation letter,

the conclusions of which are based on the fact that the Committee has not completed its lien

challenge investigation in the more than two months since it was appointed and hired counsel.

As set forth below, although the objections have nothing to do with inadequate disclosure, to the

extent the Debtors believed they were able to address the Committee's objections by adding

language to the Disclosure Statement, the Debtors have attempted to do so.[3]  Accordingly, the

Committee Objection should be overruled.

---

[2]      For the avoidance of doubt, the Debtors reserve all rights with respect to the arguments made herein,
including the right to respond to any and all objections asserted in connection with confirmation of the
Plan.

[3]      Despite being invited by the Debtors to do so, the Committee has not proposed any language to be included
in the Disclosure Statement to remedy any alleged disclosure deficiencies.

i.    <u>**The Lenders' Deficiency Claims**</u>

(a)    The Ability of Class 5 (General Unsecured Claims) to Obtain an
Increased Recovery if it Votes in Favor of the Plan is Not Illusory

12.    Under the Plan, the undersecured portion of each of the First Lien Lender

Claims and the Second Lien Lender Claims are classified as Class 5 (General Unsecured Claims)

and are entitled to vote to accept or reject the Plan in each of their respective capacities as Class

5 claimholders.  <u>See</u> Plan §§ 5.3(b), 5.4(b), 5.5.  The Committee complains that the requirement

in the Plan that Class 5 vote in favor of the Plan in order to receive additional cash distributions

(which cash would otherwise be set aside for the Lenders on account of their respective

deficiency claims) *may* be illusory because (a) the size of the Lenders' deficiency claims

allegedly can block Class 5 from voting in favor of the Plan and (b) the Debtors, "with the

encouragement" of the Lenders, can then cram down Class 5 in confirming the Plan.  <u>See</u>

Committee Objection, ¶ 42.  As a proposed remedy, the Committee requests that the Lenders'

votes in respect of their Class 5 deficiency claims be excluded for the purpose of determining

whether holders of Class 5 Claims have voted to accept the Plan.  <u>See id.</u>  There are several

problems with the Committee's position.

13.    *First*, whether the Plan's treatment of the Lenders' deficiency claims

satisfies the classification and voting requirements of the Bankruptcy Code is an issue for Plan

confirmation; not one for today.  <u>See</u> <u>In re Cardinal-Congregate I</u>, 121 B.R. at 763-64

(objections to classification, treatment of claims, and protection of creditor interests are more

properly addressed at the confirmation hearing); <u>In re Ellipso, Inc.</u>, No. 09-00148, 2012 WL

368281, at *2 (Bankr. D.D.C. Feb. 3, 2012) (holding that certain disclosure statement objections

were confirmation issues "more appropriately dealt with at a confirmation hearing" including

7

"the contention that the classification of claims is improper"). On this basis alone, the objection should be overruled.

14. *Second*, the Committee's assertions that the Debtors and the Lenders would conspire to block Class 5 from voting in favor of the Plan is baseless. As an initial matter, the Restructuring Support Agreement (the "**RSA**"), the terms of which were vigorously negotiated in good faith and at arm's-length, requires the Lenders to vote <u>all</u> of their claims in favor of the Plan. <u>See</u> RSA § 2.1(c) (requiring each Consenting Lender "to vote its First Lien Lender Claims and/or Second Lien Lender Claims *regardless of the class in which such claims are classified* . . to accept the Plan") (emphasis added). Furthermore, the Committee's supposition that the Debtors and Consenting Lenders can enter into a "simple modification" of the RSA without Court approval to defeat the ability of Class 5 to vote in favor of the Plan is wrong. The language in the order approving the RSA, which the Committee specifically negotiated and approved, expressly precludes this result by providing the Committee with written notice of all RSA amendments plus, other than amendments that waive the Consenting Lenders' termination provisions or extends an RSA deadline, the Committee has the right to object to any such proposed amendments. <u>See</u> *Order Authorizing the Debtors to Enter into and Perform Under a Restructuring Support Agreement*, ¶ 7 [Docket No. 184]. Thus, contrary to the Committee's concerns, if the Debtors and the Consenting Lenders were to amend the RSA for the purpose of allowing the Consenting Lenders to block Class 5 from voting to accept the Plan (which they will not), the Committee would get notice of such amendment and could file an objection with the Court.

15. *Third*, the Committee's assertions that the Class 5 toggle of increasing distributions to holders of Allowed Class 5 Claims (other than the Lenders on account of their

deficiency claims) if Class 5 votes in favor of the Plan is impermissible because it is conditioned

on the acceptance of the Plan by creditors from a separate Class is inaccurate.  See Committee

Objection, ¶ 42.  The Plan and Disclosure Statement both contain clear information that (a) only

holders of General Unsecured Claims may vote in Class 5 (see Disclosure Statement §§ 2.2,

6.3(b)(5), 6.4(a) & (b); Plan § 5.5; see also Class 5 Ballot (Exhibit B-3 to the proposed order

approving the Disclosure Statement)); (b) the secured portion of the Lenders' Claims are

separately classified in Class 3 and Class 4, as applicable (see Disclosure Statement §§ 2.2,

6.3(b)(3) & (b)(4), 6.4(a) & (b); Plan §§ 5.3 & 5.4; see also Classes 3 & 4 Ballots (Exhibits B-1

and B-2 to the proposed order approving the Disclosure Statement)); and (c) the proposed order

approving the Disclosure Statement specifies the Lenders shall receive one Ballot for voting in

Class 3 and/or Class 4, as applicable, and a separate Ballot for voting in Class 5 with respect to

their respective deficiency claims (see proposed Disclosure Statement Order, ¶ 12).  No

additional disclosure is necessary.

> (b)     The Definition of General Unsecured Claim Does Not Need
>          Clarification

16.     The Committee also contends that the definition of General Unsecured

Claim should be clarified to exclude the Lenders' deficiency claims for purposes of distributing

the General Unsecured Claim Cash Distribution.  See Committee Objection, ¶ 42.  The Plan and

Disclosure Statement make clear that the Lenders will not retain any portion of the General

Unsecured Claim Cash Distribution, including the Additional General Unsecured Claim Cash

Distribution, which instead will be distributed either to other holders of Class 5 General

Unsecured Claims, if such Class votes in favor of the Plan, or if not, to the Reorganized Debtors.

See Disclosure Statement §§ 2.2, 6.3(b)(3) & (b)(4); Plan §§ 1.2, 5.3 & 5.4.  Moreover, because

the Lenders are obligated under the RSA to vote in favor of the Plan, if Class 5 votes to accept

the Plan, the definition of "Additional General Unsecured Claim Cash Distribution" specifically excludes the Lenders from receiving such Distribution.[4]  Therefore, despite the Committee's contentions to the contrary, the Plan and Disclosure Statement are clear that if Class 5 votes to accept the Plan, the Consenting Lenders will not share in the Additional General Unsecured Claim Cash Distribution.[5]  There is nothing illusory about it.  Notwithstanding the foregoing, the Debtors have included language in the Disclosure Statement as follows:  "For the avoidance of doubt, if Class 5 votes to accept the Plan, the First Lien Lenders and the Second Lien Lenders will not receive their respective Pro Rata Share of the Additional General Unsecured Claim Cash Distribution."  Disclosure Statement § 2.2, fn.6.[6]

### ii.    The Disclosure Statement Contains Adequate Information Regarding the Releases

17.    The Committee's objections to the Debtors' proposed release provisions also are Plan confirmation objections.  Specifically, the Committee asserts that both the Disclosure Statement and the solicitation materials annexed to the Disclosure Statement Motion

---

[4]    "Additional General Unsecured Claim Cash Distribution" means "the portion of the General Unsecured Claim Cash Distribution that would otherwise be distributed to holders of First Lien Lender Claims and Second Lien Lender Claims on account of the Aggregate Lender Deficiency Claim *except to the extent that these holders agree to accept such less favorable treatment in the event that Class 5 (General Unsecured Claims) votes to accept this Plan*."  Plan § 1.2 (emphasis added).

[5]    Furthermore, the Lenders' deficiency claims are excluded from the definition of "General Unsecured Claim" for the purposes of calculating Litigation Trust Units as contemplated under Section 7.1 of the Plan to ensure that the Aggregate Lender Deficiency Claim was not double counted in such calculation.  Specifically, under the Plan, Classes 3, 4 and 5 are entitled to receive Litigation Trust Units (i.e., First Lien Lenders, Second Lien Lenders and holders of Allowed General Unsecured Claims) based, in part, on each such Class's respective aggregate Claims divided by the total amount of Claims (i.e., the sum of the Lenders' Aggregate Deficiency Claim (minus cash distributions) plus the Allowed General Unsecured Claims).  Therefore, if the Plan definition did not exclude the Aggregate Lender Deficiency Claim from the definition of "General Unsecured Claim" in this calculation, the Aggregate Lender Deficiency Claim would be counted twice.

[6]    In addition, in its Preliminary Statement, the Committee states that the funds to be distributed to the holders of Allowed Class 5 Claims and to holders of Allowed Class 6 (Convenience Class) Claims "revert" to the Reorganized Debtors.  The Committee misunderstands the Plan because the Plan provides each such Class with a capped amount of funds to be distributed as opposed to a guaranteed amount.  In any event, the Committee concedes this issue is a confirmation issue and does not raise the argument in the body of its objection.  See Committee Objection at ¶ 14.

are inadequate because certain creditors — those that are not entitled to vote or are entitled to

vote but do not timely vote — will nevertheless be deemed to have released certain parties under

the Plan.  <u>See</u> Committee Objection, ¶¶ 43-49.  In essence, the Committee argues that all

creditors under the Plan are required to be solicited and given an opportunity to "opt out" of the

releases, regardless of their voting entitlement.  <u>See</u> <u>id.</u>, ¶ 49.

        18.     The Committee attempts to characterize this objection as a lack of

disclosure to creditors.  However, the Committee ignores the abundance of disclosure regarding

the releases in the Plan and the proposed solicitation packages.  In particular, the description of

the releases in the Disclosure Statement and in the Plan are bolded, and in certain instances,

capitalized and provide clear notice to creditors that, upon the Effective Date, releases will be

deemed to have been given to the Released Parties related to, among other things, the Debtors

and the Reorganization Cases.  <u>See</u> Disclosure Statement § 6.14; Plan § 12.6; <u>see also</u>

Bankruptcy Rule 3016(c).  Moreover, the Ballots attached to the proposed order approving the

Disclosure Statement as Exhibits B-1 through B-4, and the Non-Voting Creditor Notices (<u>i.e.</u>,

non-voting impaired classes and non-voting unimpaired classes) annexed to the proposed order

approving the Disclosure Statement as Exhibits C-1 and C-2 each contain at least a full page of

information related to the releases under the heading "**<u>IMPORTANT INFORMATION</u>**

**<u>REGARDING THE RELEASES</u>**."  The Ballots also clearly instruct voting creditors who reject

the Plan that they must "opt out" of such releases.  The Debtors, therefore, submit there is

adequate information regarding the releases in the Disclosure Statement and the solicitation

materials.

        19.     In addition, the Committee twice concedes that this objection is a Plan

confirmation objection.  <u>See</u> Committee Objection, ¶¶ 44 and 48.  It does so because the

determination as to the validity of the releases is more appropriately made at confirmation.  See In re Quigley Co., 337 B.R. 110, 118-19 (Bankr. S.D.N.Y. 2007) (approving disclosure statement and holding that plan-related issues, including the scope of a release, are confirmation issues); In re Drexel Burnham Lambert Grp. Inc., No. 09 B 10421, 1992 WL 62758, at *1 (Bankr. S.D.N.Y. Mar. 5, 1992) (stating that objections to a plan of reorganization's release and injunction provisions were in the nature of confirmation objections and therefore improperly raised as objections to the disclosure statement).  Moreover, while not ripe for today, the Debtors expect to demonstrate at the Confirmation Hearing that the releases are appropriate and consistent with release provisions which have been previously approved in this jurisdiction.  See, e.g., In re Genco Shipping & Trading Ltd., 513 B.R. 233, 270 (Bankr. S.D.N.Y. 2014) (holding that, subject to satisfaction of certain requirements, a plan can require holders of unimpaired claims or equity interests to grant releases to third-parties even when such parties were not entitled to vote on the plan and did not have the option to opt-out of such releases); In re MPM Silicones, LLC, No. 14-22503-RDD, 2014 Bankr. LEXIS 3926, at *100 (Bankr. S.D.N.Y. Sept. 9, 2014) (finding that creditors who voted in favor of the plan or did not elect to opt-out of the third-party releases were deemed to have consented to the third-party releases).

      iii.    **Committee Exculpation**

      20.    Although confirmation objections are not ripe at this time, the Debtors have modified the Plan to clarify that the Committee and its members (solely in their capacity as Committee members) and the other Creditors' Committee Parties will receive exculpations, irrespective of whether such parties object to or opt out of the proposed releases under the Plan, and the Disclosure Statement has been revised to reflect this revision.  See Plan § 12.7; Disclosure Statement § 6.15.  As such, this issue has been resolved.

### iv.    The Committee's Request to Include a Recommendation Letter in the Solicitation Materials Should Be Denied

21.    The Committee states that the Debtors should be directed to include a negative solicitation letter from the Committee in the solicitation packages being sent to holders of Class 5 Claims entitled to vote.  See Committee Objection, ¶¶ 38-41.  Notwithstanding that the Committee has had more than two months to investigate whether the Lenders' liens are valid and properly perfected, the essence of the negative solicitation letter is that the Committee has had insufficient time to investigate the Lenders' liens and merely speculates that if the liens are invalid, holders of General Unsecured Claims could potentially get more.

22.    The Debtors worked vigorously to reach the resolution with the Lenders that forms the basis of the Plan and should not be required to include such a letter in the Class 5 solicitation package.  However, the Debtors have included the following language at the end of the "Important Notice" section of the Disclosure Statement (i.e., the first four pages) in bolded capitalized letters:  "The Creditors' Committee does not support the Plan and believes that distributions to unsecured creditors should be increased."

23.    Further, because the letter will be separate from the Disclosure Statement (which likely will be mailed to creditors in PDF format on a CD-ROM), a General Unsecured Creditor entitled to vote may give such letter more weight than is intended or warranted by its inclusion in the Class 5 solicitation package and such creditor may be unduly influenced to reject the Plan.  Thus, if the Court is inclined to allow the Committee to include such a letter, either: (a) the Committee's position in the letter should be contained in a separate section of the Disclosure Statement (with a notation in the "Introduction" section of the Disclosure Statement pointing creditors to the applicable section of the Disclosure Statement); or (b) the Debtors

should be permitted to include a separate letter in support of the Plan.  A copy of the Debtors'

proposed letter is annexed hereto as <u>Exhibit A</u>.

## **CONCLUSION**

WHEREFORE, the Debtors respectfully request that the Court overrule the

Committee Objection, grant the relief requested in the Disclosure Statement Motion, and grant

such other and further relief as may be just or proper.

Dated:  July 25, 2016
      New York, New York

             WILLKIE FARR & GALLAGHER LLP
             *Counsel for the Debtors and*
             *Debtors in Possession*

             By:   /s/ Matthew A. Feldman
                  Matthew A. Feldman
                  Paul V. Shalhoub
                  Robin Spigel
                  Andrew S. Mordkoff

                  787 Seventh Avenue
                  New York, New York 10019
                  Telephone: (212) 728-8000
                  Facsimile: (212) 728-8111

**<u>Exhibit A</u>**

[CORE Letterhead]

July [   ], 2016

TO: ALL HOLDERS OF CLAIMS IN CLASS 5 (GENERAL UNSECURED CLAIMS) AND
CLASS 6 (CONVENIENCE CLAIMS):

You have received this letter and the enclosed materials because, as a holder of a Claim
in Class 5 (General Unsecured Claims) and/or Class 6 (Convenience Claims), you are entitled to
vote to accept or reject the *First Amended Joint Chapter 11 Plan of Reorganization for AOG
Entertainment, Inc. and Its Affiliated Debtors* (including all exhibits thereto and as amended,
modified or supplemented from time to time, the "**Plan**").[1]

As set forth in the enclosed disclosure statement (the "**Disclosure Statement**") and
accompanying solicitation materials (collectively, the "**Solicitation Materials**"), the Debtors and
their advisors have worked tirelessly over the past several months to formulate a plan that will
right-size the Debtors' capital structure and position the Debtors to thrive as a reorganized
company, preserve jobs, maximize value for all stakeholders, and avoid a value destructive
liquidation.  As a result, the Debtors have proposed and are seeking Bankruptcy Court approval
of the enclosed Plan, which has the support of 100% of the Debtors' prepetition secured lenders
(collectively, the "**Consenting Lenders**").

**The Debtors and the Consenting Lenders are confident that through their combined
efforts the Plan represents the best chance for the Debtors to reorganize, and represents a
comprehensive and intertwined set of agreements for the benefit of the Debtors' creditors,
employees, service providers, and other stakeholders.**

> **ACCORDINGLY, THE DEBTORS STRONGLY URGE YOU TO VOTE IN FAVOR
> OF THE PLAN**

As explained in further detail in the Disclosure Statement, the overall purpose of the Plan
is to provide for the restructuring of the Debtors' liabilities in a manner designed to maximize
recovery to stakeholders and to enhance the financial viability of the Reorganized Debtors.

The resulting capital structure of the Reorganized Debtors will be substantially de-
levered and the Debtors believe that not only will they be well-positioned to succeed in the
future, but also that the Plan is better than any other restructuring option available.  The Debtors
also believe that the Plan provides for appropriate treatment of all Classes of Claims and
Interests, taking into account the valuation of the Company and the differing natures and
priorities of the Claims and Interests, and the intercreditor arrangements between the First Lien
Lenders and the Second Lien Lenders.

---

[1]    All capitalized terms used but not defined herein have the meanings given them in the Plan or Disclosure
Statement, as applicable.

A letter from the Official Committee of Unsecured Creditors (the "**Creditors' Committee**") is also included with the enclosed Solicitation Materials.  Since its appointment on May 17, 2016, the Debtors and the Debtors' professionals have worked diligently with the professionals for the Creditors' Committee in order to assist the Creditors' Committee in carrying out its duties as a fiduciary of the estates.  To that end, the Debtors have in good faith and in the spirit of cooperation made every effort to assist the Creditors' Committee in conducting its due diligence in a timely and efficient manner.

In its letter, however, and despite the ongoing open and candid discussions and diligence efforts, in the Debtors' view, the Creditors' Committee has gone to great lengths to speculate and raise unsubstantiated concerns regarding the Plan and the valuation set forth in the Disclosure Statement.  The Creditors' Committee raises these dubious concerns despite the fact that its professionals are, admittedly, still in the process of investigating claims and reviewing documents and other information.  **The Debtors and the Consenting Lenders strenuously disagree with these aspersions**.  The Plan was the product of good faith, arms' length negotiations between the Debtors and the Consenting Lenders, and the provisions of the Plan result in a fair and equitable distribution of value to all stakeholders.  The Consenting Lenders support the Plan.

The Debtors strongly recommend that each holder of Claims in Class 5 (General Unsecured Claims) and Class 6 (Convenience Claims) vote to accept the Plan.  If the Plan is confirmed, you, as a holder of Claims in Classes 5 or 6, and other interested parties, will benefit because the Plan provides for a better recovery than would occur if the Debtors were to be liquidated in a chapter 7 proceeding.

**THE DEBTORS, THEREFORE, RECOMMEND THAT ALL CREDITORS ENTITLED TO VOTE SUBMIT A TIMELY BALLOT VOTING TO ACCEPT THE PLAN.**

The materials in the Solicitation Materials are intended to be self-explanatory.  If you should have any questions, however, please feel free to contact the Debtors' solicitation agent, Kurtzman Carson Consultants LLC via telephone at (877) 709-4752 or for international calls at (424) 236-7232, or by regular mail, hand or overnight delivery to AOG Entertainment, Inc., c/o Kurtzman Carson Consultants LLC 2335, Alaska Avenue, El Segundo, CA 90245.