**Exhibit A**

**MCDERMOTT WILL & EMERY LLP**
Timothy W. Walsh
Darren Azman
340 Madison Avenue
New York, New York 10173
Telephone: (212) 547-5400
Facsimile: (212) 547-5444

*Counsel to Simon Robert Fuller*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

|  |  |  |
|---|---|---|
| In re: | : | Chapter 11 |
|  | : |  |
| AOG ENTERTAINMENT, INC., *et al.*,[1] | : | Case No. 16-11090 (SMB) |
|  | : |  |
| Debtors. | : | (Jointly Administered) |
|  | : |  |

**FIRST SET OF SIMON ROBERT FULLER'S RULE 2004 DOCUMENT REQUESTS**

To: CORE Entertainment Holdings Inc.; CORE Entertainment Inc.; CORE Entertainment UK Limited; CORE Entertainment Offeror LLC; CORE Media Group Inc.; AOG Entertainment, Inc.; Focus Enterprises, Inc.; Sharp Entertainment Holdings, LLC; BP Production Services, LLC; Sharp Entertainment, LLC; Sharp Digital, LLC; CORE MG UK Holdings Limited; 19 Entertainment Limited; Native Management Limited; TLS Management Limited; Native Songs Limited; 19 Entertainment, Inc.; 19 Recording Services, Inc.; All Girl Productions; 19 Touring LLC; Dance Nation Productions, Inc.; Southside Productions, Inc.; On The Road Productions; IICD, LLC; 19 Recordings, Inc.; J2K Productions, Inc.; J2K Productions, Inc.; This Land Productions, Inc.; CTA Productions, Inc.; Master of Dance Productions Inc.; SYTYCD DVD Productions, Inc.; 19 Publishing Inc.; 19 TV Limited; 19 Merchandising Limited; 19 Management Ltd; Brilliant 19 Limited; 19 Productions Limited; Double Vision Film Limited; 19 Touring Limited; 19 Recordings Limited; 19 Fashionair Limited; 19 Entertainment Worldwide LLC; CORE Media Group Productions Inc.; CORE Group Productions Ltd.; 7th Floor Productions, LLC; Sunset View Productions, LLC; Gilded Entertainment, LLC; Alta Loma Entertainment, LLC; Clown Car Productions, LLC; Fresh Start Productions, LLC; Magma Productions, LLC; Pioneer Production Services LLC; B17 Entertainment, LLC; West Side Gear Company, LLC; Squadron Media, LLC; Copper Hill Entertainment, LLC; Halfire-CORE; Sonic Transformation, LLC (dba Rhythm and Cues); Big Red 2

---

[1] A list of the Debtors in these chapter 11 cases and the last four digits of each Debtor's taxpayer identification number is attached as Schedule 1 to the Declaration of Peter Hurwitz, President of Certain Debtors, in Support of Chapter 11 Petitions and First Day Pleadings [Docket No. 3] and at http://www.kccllc.net/AOG. The Debtors' executive headquarters are located at 8560 West Sunset Boulevard, 8th Floor, West Hollywood, CA 90069.

Entertainment LLC (dba Nigel Lythgoe Productions); Liverpool Productions LLC; Little Acorn Productions LLC; Manchester Productions LLC; CORE G.O.A.T. Holding Corp; G.O.A.T. Blue Moon Parent, LLC; G.O.A.T. Blue Moon Holdings, LLC; EPE Holding Corporation; Elvis Blue Moon Parent, LLC; Elvis Blue Moon Holdings, LLC; CORE Entertainment Cayman Limited.

Simon Robert Fuller ("Fuller"), by and through his undersigned counsel, submits the following request for production of documents pursuant to Rule 2004 of the Federal Rules of Bankruptcy Procedures:

### DEFINITIONS

1. Wherever appropriate in this request, the singular form of any word includes the plural and vice versa, and the masculine form of a word shall be interpreted as feminine and vice versa.

2. The connectives "and" and "or" shall be construed either disjunctively or conjunctively as necessary to bring within the scope of these requests all responses that might otherwise be construed to be outside their scope.

3. The Terms "all," "any," and "each" shall be construed as encompassing any and all.

4. "Communication" means the transmittal of information (in the form of facts, ideas, inquiries or otherwise).

5. "Concerning" means relating to, referring to, describing, evidencing or constituting.

6. "Documents" is defined to be synonymous in meaning and equal in scope to the usage of the term "documents or electronically stored information" in Fed. R. Civ. P. 34(a)(1)(A). A draft or non-identical copy is a separate document within the meaning of this term.

7. "Identify," when referring to a person, shall mean to give, to the extent known, the person's full name, present or last known address, and when referring to a natural person, additionally, the present or last known place of employment. Once a person has been identified in accordance with this subparagraph, only the name of that person need be listed in response to subsequent discovery requesting the identification of that person.

8. "Identify," when referring to documents, means to give, to the extent known, the (i) type of document; (ii) general subject matter; (iii) date of the document; and (iv) author(s), addressee(s) and recipient(s). In the alternative, the responding party may produce the documents, together with identifying information sufficient to satisfy Fed. R. Civ. P. 33(d).

9. "Information" shall be expansively construed and include, without limitation, facts, data, opinion, images, impressions, concepts and formulae.

10. "Person" means any natural person or any legal entity, including, without limitation, any business or governmental entity or association.

11. "Relate to" or "relating to" any given subject shall mean any information or any document or documents that comprise, constitute, contain, embody, evidence, identify, reflect, state, refer to, deal with or are in any way pertinent to that subject, including but not limited to, documents concerning the preparation of other documents.

12. "Thing(s)" means any tangible object encompassed within the most inclusive definition of this term in any decision from a court in this or any other controlling jurisdiction, including but not limited to any tangible things that constitute or contain matters within the scope of Rule 26(b) of the Federal Rules of Civil Procedure.

13. "You" and "your" means or refers to the respective Core Entity to which this request is directed.

3

14. "<u>Acquisition Debt</u>" means the debt and other obligations incurred pursuant to the "existing bridge loan facility" described in paragraph 29 of the Hurwitz Declaration.

15. "<u>Board Materials</u>" means all documents (including any drafts) provided to or considered by the board of directors, board of managers, or similar governing body (as applicable) of any Core Entity, or any member, committee, or subcommittee thereof.

16. "<u>Board Minutes</u>" means all written or recorded (by any means, including, without limitation, tape recording, video recording, or otherwise) consents, resolutions, minutes, transcriptions, or notes of any meetings, decisions, deliberations, discussions, or actions of the board of directors, board of managers, or similar governing body (as applicable) of any Core Entity, or any member, committee, or subcommittee thereof, including, without limitation, all drafts of any such materials.

17. "<u>Core Entity</u>" means each of AOG Entertainment, Inc.; CORE Entertainment Holdings Inc.; CORE Entertainment Inc.; CORE Entertainment UK Limited; CORE Entertainment Offeror LLC; CORE Media Group Inc.; AOG Entertainment, Inc.; Focus Enterprises, Inc.; Sharp Entertainment Holdings, LLC; BP Production Services, LLC; Sharp Entertainment, LLC; Sharp Digital, LLC; CORE MG UK Holdings Limited; 19 Entertainment Limited; Native Management Limited; TLS Management Limited; Native Songs Limited; 19 Entertainment, Inc.; 19 Recording Services, Inc.; All Girl Productions; 19 Touring LLC; Dance Nation Productions, Inc.; Southside Productions, Inc.; On The Road Productions; IICD, LLC; 19 Recordings, Inc.; J2K Productions, Inc.; J2K Productions, Inc.; This Land Productions, Inc.; CTA Productions, Inc.; Master of Dance Productions Inc.; SYTYCD DVD Productions, Inc.; 19 Publishing Inc.; 19 TV Limited; 19 Merchandising Limited; 19 Management Ltd; Brilliant 19 Limited; 19 Productions Limited; Double Vision Film Limited; 19 Touring Limited; 19 Recordings Limited; 19 Fashionair Limited; 19 Entertainment Worldwide LLC; CORE Media

4

Group Productions Inc.; CORE Group Productions Ltd.; 7th Floor Productions, LLC; Sunset View Productions, LLC; Gilded Entertainment, LLC; Alta Loma Entertainment, LLC; Clown Car Productions, LLC; Fresh Start Productions, LLC; Magma Productions, LLC; Pioneer Production Services LLC; B17 Entertainment, LLC; West Side Gear Company, LLC; Squadron Media, LLC; Copper Hill Entertainment, LLC; Halfire-CORE; Sonic Transformation, LLC (dba Rhythm and Cues); Big Red 2 Entertainment LLC (dba Nigel Lythgoe Productions); Liverpool Productions LLC; Little Acorn Productions LLC; Manchester Productions LLC; CORE G.O.A.T. Holding Corp; G.O.A.T. Blue Moon Parent, LLC; G.O.A.T. Blue Moon Holdings, LLC; EPE Holding Corporation; Elvis Blue Moon Parent, LLC; Elvis Blue Moon Holdings, LLC; and CORE Entertainment Cayman Limited.

18. "First Lien Debt" means the debt and other obligations incurred pursuant to the First Lien Term Loan Agreement (as defined in the Hurwitz Declaration).

19. "Hurwitz Declaration" means that certain *Declaration of Peter Hurwitz, President of Certain Debtors, in Support of Chapter 11 Petitions and First Day Pleadings* [Docket No. 3] filed in the chapter 11 cases of *AOG Entertainment, Inc., et al.*, Case No. 16-11090, in the United States Bankruptcy Court for the Southern District of New York.

20. "Second Lien Debt" means the debt and other obligations incurred pursuant to the Second Lien Term Loan Agreement (as defined in the Hurwitz Declaration).

**INSTRUCTIONS**

21. You shall produce all Documents, Things, and Information responsive to these requests that are in your possession, custody, or control, including all documents and things in the possession, custody, or control of your past or present agents, employees, companies, licensees, representatives, investigators, or attorneys.

5

22. Documents and Things shall be produced with sufficient information to identify the files or repositories in which such responsive Documents and Things are maintained in the normal course of business, including, for example, an index, key, code or other means of ascertaining the source of the produced Documents and Things.

23. All Documents that are produced in electronic format should be provided with: (i) Group 4 "tiff" images and IPRO-ready LFP and OPT files; (ii) a Concordance delimited import file with boundaries; (iii) full text OCR, with OCR text files provided on a document level; and (iv) all meta data fields associated with each electronic document. Fuller also requests that all spreadsheets created in Microsoft Excel or similar spreadsheet program be produced in their native format. Fuller reserves his right to request that other Documents be produced in their native format if necessary. The following metadata fields are also to be produced with all documents produced in electronic format:

| Field Name | Description |
| --- | --- |
| BEGDOC | The beginning bates number for a document. This represents the first page of any given document. |
| ENDDOC | |
| BEGATTACH | The beginning bates number for a family of documents. This represents the first page in each family (parent-child) relationship. |
| ENDATTACH | |
| APPNAME | Name of the application that opens the native file. |
| ATTACHCOUNT | The number of attachments any given item possesses. |
| ATTACHNAMES | List of files attached to an email. |
| ATTACHRANGE | The DOCID range for the family of items. |
| CUSTODIAN | Custodian name. |
| FROM | The name and email address of the individual who wrote the email. |

6

| Field Name | Description |
|---|---|
| TO | The complete list of all names and emails of all individuals contained in the "To" field of the email. |
| CC | The complete list of all names and emails of all individuals contained in the "CC" field of the email. |
| BCC | The complete list of all names and emails of all individuals contained in the "BCC" field of the email. |
| AUTHOR | The application recorded "author" field of a document. |
| SUBJECT | The subject of the email. |
| TITLE | The application recorded "title" field of a document. |
| SORTDATE | First use SENTDATE, then MODIFIEDDATE, then CREATEDATE of the parent item. Populated for all family members. |
| SORTTIME | First use SENTTIME, then MODIFIEDTIME, then CREATETIME of the parent item. Populated for all family members. |
| SENTDATE | The date captured by the mailstore as to when the email was sent. |
| SENTTIME | The time captured by the mailstore as to when the email was sent. |
| RECEIVEDDATE | The date captured by the mailstore as to when the email was received. |
| RECEIVEDTIME | The time captured by the mailstore as to when the email was received. |
| CALSTARTDATE | The application recorded date that a calendar item was scheduled to start. |
| CALSTARTTIME | The application recorded time that a calendar item was scheduled to start. |
| CALENDDATE | The application recorded date that a calendar item was scheduled to end. |
| CALENDTIME | The application recorded time that a calendar item was scheduled to end. |
| CREATEDATE | The application recorded date the file was generated. |
| CREATETIME | The application recorded time the file was generated. |

7

| Field Name | Description |
|---|---|
| MODIFIEDDATE | The application recorded date the file was last modified. |
| MODIFIEDTIME | The application recorded time the file was last modified. |
| PRINTDATE | The application recorded date the file was last printed. |
| PRINTTIME | The application recorded time the file was last printed. |
| FILETYPE | Description of type of document, i.e. Email, E-Doc. |
| FILEEXT | The extension of the file. |
| FILENAME | The name of the file. |
| FILEPATH | The path to the file, including pst storename and folders if item is from a PST. |
| FILESIZE | The size of any given item in kilobytes.  This field includes parent emails as well. |
| MAILFOLDER | The name of the folder path within the parent mail store that contains the email. |
| MD5HASH | MD5 Hash of efile, or MD5 Hash of dedupe fields for email |
| MSGCLASS | Outlook Email - Mail item class (Note, Report, Meeting, etc.) |
| INTMSGID | The unique Internet message ID of an email.  This is assigned in the email header and is not specific to the email application used. |
| ENTRYID | The unique mail identifier assigned by the mail application (pst or nsf) for every mail item. |
| HIDDEN_CONTENT | Yes/No field.  Populate with YES for any documents that contain comments, speaker notes, track changes, etc. |
| NATIVEFILE | The relative path linking the document. |
| FULLTEXT | Relativity path linking the text file. |

24.     Whenever you are asked to produce Information or a Document that is deemed by you to be properly withheld from production for any reason, you shall provide a privilege log

that will include listing such Information or Document by title or subject heading, date, author, person who signed the document, addressee and all recipients, and a statement of the grounds(s) asserted for withholding the document, including attorney-client privilege or work product privilege.

25. If you withhold any Information or any Document on the claim of attorney/client or work product privilege, identify the privilege claimed as well as each Communication (including oral Communications) and Document for which such privilege is claimed, together with the following information with respect to each such Communication and Document:

    a. Date;

    b. Sender;

    c. Addressee;

    d. Subject;

    e. The basis on which the privilege is claimed; and

    f. The names of persons to whom copies of any part of the Document were furnished, together with an identification of their employer and their job titles.

26. If you maintain that any Document or Thing requested by Fuller has been destroyed, set forth the contents of the Document or Thing the date of its destruction and the name of the person who authorized its destruction.

27. Where an objection is made to a request, state all grounds upon which your objection is based.

28. The Documents, Communications, Things, and Information produced pursuant to this request are to be segregated and identified by the number of the request below to which they are responsive, or are to be produced as they are maintained in the ordinary course of business.

29. Unless otherwise specified, these requests seek information and documents prepared during, or related to, the period of time from January 1, 2010 through the date of your response hereto, without regard to what date the information came into your possession.

## DOCUMENT REQUESTS

30. All Board Minutes and Board Materials concerning the Acquisition Debt, the First Lien Debt, the Second Lien Debt, or any audit conducted concerning (a) valuations of any Core Entity's assets; (b) pricing of any Core Entity's assets; and (c) overall financial condition of any Core Entity.

31. All documents and communications concerning the business purpose for each Core Entity incurring the Acquisition Debt, the First Lien Debt, or the Second Lien Debt.

32. All documents and communications concerning the use of proceeds from the Acquisition Debt, the First Lien Debt, or the Second Lien Debt.

33. All documents and communications concerning the legal and business relationship between any Core Entity and 19 Entertainment.

34. All documents and communications concerning the source of cash used to make payments of interest and principal on the Acquisition Debt, the First Lien Debt, and the Second Lien Debt.

35. All documents and communications concerning any potential or actual benefit inuring to any Core Entity as a result of incurring the Acquisition Debt, the First Lien Debt, or the Second Lien Debt.

36. All documents and communications concerning each Core Entity's business plans, projections, cash and other forecasts, strategic plans, and operating plans, including, without limitation, underlying assumptions and/or any rationale for changes in assumptions.

37. All documents and communications sufficient to identify any service provided by (i) any Core Entity to 19 Entertainment, and (ii) 19 Entertainment to any Core Entity.

38. All documents and communications sufficient to identify any payment or transfer of money, assets, or other property by (i) any Core Entity to 19 Entertainment, and (ii) 19 Entertainment to any Core Entity.

39. All documents and communications sufficient to identify any agreement between any Core Entity and 19 Entertainment and all copies of such agreements (including current, previous, and draft forms).

40. All documents and communications sufficient to identify the business operations of each Core Entity and how each Core Entity contributes value, if any, to the group of Core Entities as a whole.

41. All documents and communications relating to any Core Entity's decision to file for relief under chapter 11 of title 11 of the United States Code.

42. All internal or external audit reports, and any correspondence relating to such audit reports, concerning: (a) valuations of any Core Entity's assets; (b) pricing of any Core Entity's assets; and (c) overall financial condition of any Core Entity.

43. All documents and communications concerning: (a) any Core Entity's ability to operate and continue as a going concern; (b) any Core Entity's solvency, liquidity, or cash flow limitations, including, without limitation, any solvency analyses; (c) any Core Entity's ability to take on debt, or to repay any loan from any lender; (d) the possibility of any Core Entity filing for bankruptcy protection; and/or (e) the sufficiency (or lack thereof) of any Core Entity's capital.

44. All documents sufficient to demonstrate the financial condition of each Core Entity for each month, quarter, and year since January 1, 2010, including, without limitation: (a)

financial statements, including, without limitation, consolidated and consolidating (i) balance sheets, (ii) statements of income, (iii), statements of cash flow, (iv) statements of changes in equity, and (v) supporting notes to financial statements; (b) general ledgers, including, without limitation, (i) transaction level electronic data, and journal entries and journal entry support documentation; (c) internal accounting policy manuals, including, without limitation, charts of accounts; (d) off-balance sheet debt, including, without limitation, contingent liabilities, guaranties, and leases; (e) distributions and dividends; and (f) deposits into and withdrawals from any financial institution wherever located.

45.    All credit agreements, guarantees, collateral agreements, intercreditor agreements, and related documents executed in connection with the Acquisition Debt, the First Lien Debt, and the Second Lien Debt.

46.    All documents and communications concerning the UK Audit (as that term is defined in Fuller's *Ex Parte Motion for Order Authorizing Simon Robert Fuller to (A) Conduct a 2004 Examination of AOG Entertainment, Inc. and its Debtor and Non-Debtor Affiliates, and (B) Seek Related Document Production*).